**IN THE DISTRICT COURT UNITED STATES**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**CHARLES SPANSEL**
**and JANET SPANSEL**                                                    **PLAINTIFFS**

**V.**                                          **CIVIL ACTION NO. 1:08cv1516 LG RHW**

**STATE FARM INSURANCE COMPANY,**
**STEVE SAUCIER, Individually and as Agent**
**of STATE FARM INSURANCE CO.,**
**and JOHN DOES 1-10.**                                               **DEFENDANTS**

**RESPONSE IN OPPOSITION TO STATE FARM FIRE AND CASUALTY COMPANY'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

      **COME NOW** Plaintiffs, Charles and Janet Spansel, by and through undersigned counsel, and submit this their response in opposition to Defendant State Farm's Motion for Partial Summary Judgment of Plaintiffs' claims under the Mississippi Valued Policy Statute and claims for gross negligence and malice, breach of fiduciary duty, bad faith refusal to pay, intentional and/or negligent infliction of emotional distress, fraudulent misrepresentation and/or omission, estoppel and detrimental reliance, action for declaratory relief, declaration of insurance coverage, indemnity and unjust enrichment, reformation, specific performance, and punitive damages, as well as for a declaration that the Plaintiffs cannot recover replacement cost payments for their dwelling under their homeowners policy. In support thereof, Plaintiffs submit as follows, to wit:

**I.**     **INTRODUCTION**

      1.    Defendant State Farm, fails to meet the burden imposed on them as the movants in a summary judgment motion. Under the standard this Court employs upon considering such a motion, State Farm cannot demonstrate that no genuine issues of material fact exist entitling them

to partial judgment as a matter of law.  The Court should deny the Motion for Partial Summary Judgment.

## II.    FACTUAL BACKGROUND

2.    On or about August 11th, 2008, the Plaintiffs filed their Complaint against Defendant State Farm Fire and Casualty Company ("State Farm"), *inter alia*.  Exhibit "A".  Plaintiffs alleged numerous causes of action in its complaint against the Defendants, all of which are incorporated herein by reference,  including claims of bad faith denial of the Spansels' insurance claim by failing to adequately and fairly inspect and investigate Plaintiffs' claims under its homeowners policy.  As part of that allegation, Plaintiffs alleged that State Farm wholly denied Plaintiffs' claims under their homeowners' policy without any legitimate and arguable reason, and in a reckless, willful and malicious manner.  The Plaintiffs also submit that State Farm negligently adjusted the Plaintiffs' insurance claim with reckless disregard for the rights of the insured.  Consistent with Plaintiffs' allegations of bad faith against State Farm, Plaintiffs alleged that such behavior warranted extra-contractual, punitive damages under Miss. Code Ann. § 11-1-65.

### Facts

3.    Plaintiffs Charles and Janet Spansel bought the subject property, located at 109 Sandy Hook Drive, Pass Christian, MS, in May of 2000 as a second home.  See Deposition of Charles Spansel, page 10, attached as Exhibit "B".   At the time of Hurricane Katrina, the Spansel residence consisted of a 2,800 square foot, two-story residence constructed with cinder block, wood, and vinyl siding.  See State Farm's Flood File, attached as Exhibit "C" at Bates page 100014 and Plaintiffs' Pre-Storm Photos attached *en globo* as Exhibit "D".  The home was elevated 7 ft. 6 inches above grade.  See State Farm's Homeowners File, attached as Exhibit "E" at Bates page 100120.  The

Plaintiffs also had a 20x16 elevated gazebo which was completed in June of 2005 and a 10x16 shed. See Exhibit "C" at pages 49-50 and Exhibit "C" at Bates page 100069.

4.      Plaintiffs bought the property for approximately $285,000.00 in 2000, at which time the home appraised for $319,000.00.  See Exhibit "B" at page 44.  However, subsequent to the purchase, Plaintiffs engaged in substantial remodeling to improve the property.  See Exhibit "B" at page 46.  Specifically, before they took possession of the house, the Plaintiffs moved a wall, added a wall, replaced the windows, expanded the porch, performed a small renovation of the kitchen, fully painted the interior and exterior, repaired and refinished hardwood floors, put in a new stairwell, and replaced almost all of the lighting, interior and exterior- among other projects.  See Exhibit "B" at page 47.  This renovation cost the Spansels approximately $65,000.00 to $70,000.00.  See Exhibit "B" at page 48.  Then sometime in 2002 or 2003, the Spansels spent approximately $50,000.00 renovating the downstairs portion of the house- installing a kitchen, renovating the bath area, and raising electrical outlets.  All told, the Plaintiffs spent more than $100,000.00 to renovate the property subsequent to their property's $319,000.00 appraisal.

5.      The Plaintiffs for the most part purchased all new furnishings for the home.  See Deposition of Janet Spansel, attached as Exhibit "F" at page 44.  The Plaintiffs spent approximately $9,000.00 to $10,000.00 to build their outdoor gazebo.  See Exhibit "B" at page 51.

6.      The Spansels carried Homeowners and Flood Insurance when Hurricane Katrina hit the Mississippi Gulf Coast on August 29, 2005.  See Exhibit "B" at page 25.  It is undisputed that the Plaintiffs' homeowners policy was renewed annually and that the policy in question was in full force and effect on August 29, 2005.  See the Homeowners Policy and Riders attached *en globo* as Exhibit "G" and the Declaration Page attached as Exhibit "H".

7.      During the spring of 2005, Charles Spansel went into Agent Steve Saucier's office to review all of his coverages based on a concern that he might be underinsured.  See Exhibit "B" at page 28, 41, 55.  Mr. Spansel met with a woman in Saucier's office, to whom he  indicated that his house was now worth more money and that he wanted to "make sure [he] was covered."  See Exhibit "B" at pages 55-56.  Based on their conversation, Mr. Spansel increased the limits of his flood policy at that time.  Exhibit "B" at page 55.

8.      In August of 2005, Plaintiffs' coverage under the Homeowners Policy included the following limits: $138,300.00 for Coverage A Dwelling; $103,725.00 for Coverage B Personal Property; and $13,830.00 for Other Structures.  See Exhibit "H".  The Policy also included Coverage A Replacement Cost, Option JF for Jewelry and Furs for up to $2,500.00, and Option OL for Ordinance/Law.  See Exhibit "H".  Plaintiffs' flood policy comprised $148,400.00 for Dwelling and $100,000.00 for Contents.  See the Flood Declaration Page, attached as Exhibit "I".

9.      On August 29, 2005, Hurricane Katrina struck the Mississippi Gulf Coast approximately 20 miles west of the Spansel's residence on Sandy Hook Drive, with the Plaintiffs' property on the side of the storm which generally experiences the strongest winds and greatest storm surge.  See Report of William R. Dalley, PhD., at 2, attached as Exhibit "J".   Defendant's own expert William R. Dally **acknowledged that wind gusts at Plaintiffs' property reached 142 mph and cited 22.7 feet as the high water mark**.  Exhibit "J" at page 4, 5.  Dally also **acknowledged that the strongest winds preceded the peak surge by "about 1 hour."**  See Exhibit "J" at page 5.

10.      Hurricane Katrina destroyed the Plaintiffs' home.  All that was left of the structure were the porches on the west and south side of the home and a flight of stairs.  Exhibit "J" at page

3 and the Post-storm Photographs, attached *en globo* as Exhibit "K".  The Spansels were not able to reach the property until about a week after the storm.  See Exhibit "B" at page 77.  The only contents they could salvage were an iron laid table and a couple of dishes.  Exhibit "B" at pages 78-79.  At the property, Mr. Spansel observed that there was one "pine uprooted and down, but most of my pines were snapped."  Exhibit "B" at page 99.

11.    On or about September 5th, 2005, the Spansels contacted Defendant State Farm to inform them of their loss.  See Exhibit "E" at Bates page 100015 and Exhibit "B" at page 79.  Charles Spansel also made numerous attempts to contact Agent Steve Saucier.  Exhibit "B" at page 83.  Saucier never returned Spansel's calls.  *Id*.

12.    On October 3rd, 2005, Adjustor Avery Murrah submitted a request that an engineer "determine the cause(s) of damage to the building on the above referenced claim."  See Engineer Request Form in Exhibit "E" at Bates page 100043 and the Homeowners Activity Log at Bates page 100121.  On October 6th, 2005, State Farm Adjustor Avery Murrah mailed a letter to the Plaintiffs stating that, "[t]he damage to your property may have been caused by wind and water.  We are continuing to investigate that portion of your loss caused by wind."  See October 6, 2005 State Farm Correspondence, in Exhibit "E" at Bates pages 100044-100045.  Charles Spansel offered to meet Adjustor Murrah but Murrah told him, "it wasn't necessary."  Exhibit "B" at page 91.

13.    On or about October 7th, 2005, Plaintiffs' flood policy paid the policy limits: $148,400.00 for their dwelling and $100,000.00 for their contents, which in no way made them whole.  See Exhibit "C" at Bates pages 100021 and 100007.

14.    Thus, it is clear from State Farm's own internal records that it did not know the cause of the loss on October 3rd and attributed the damage to both wind and water on October 6th.  Then,

on October 19th, without the benefit of an engineering report and even without the benefit of an on site inspection, State Farm determined that the damage was caused by flood.

15.    On October 19th, 2005, prior to receipt of the engineer's report, without ever inspecting the Plaintiffs' property, and without indicating any other step had been taken to investigate the cause of the loss, Adjustor Avery Murrah noted in the Homeowners Activity Log that he sent the Spansels a denial letter of their homeowners' claim "based upon flood being cause of loss" and directed that the "[f]ile ready to close without payment.".  See Exhibit "E" at Bates page 100121.  On the same day, a State Farm Catastrophe Team Manager cancelled the request for an engineer's report.  See the Cancellation Request in Exhibit "E" at Bates page 100042.

16.    Three days later on October 22nd, and after the decision to deny Plaintiffs' homeowners claim, Adjustor Avery Murrah inspected the property.  He noted in the Homeowners Log:

> I could not tell much about construction other than it has cinder block walls around a portion of the elevated area.  However, based upon the investigation of the other risks I have reviewed in the area, there is no question that it was washed away by water reaching at least 25 feet above grade.  Exhibit "E" at Bates page 100120.

On October 24th, 2005, State Farm wrote the Plaintiffs, stating that, "[b]ased on the results of our discussion, site inspection, and investigation, it was determined the damage to your house was caused by flood, surface water, waves and/or tidal water."  See Denial Letter in Exhibit "E" at Bates pages 100040-100041.  The letter did not acknowledge any wind damage to Plaintiffs' property.  Id. Defendant State Farm **wholly denied** the Spansel's claim under the Homeowners Policy, issuing no payment for Plaintiffs' structure, personal property,  other structures, or otherwise.

17.    In or around June of 2007, Plaintiffs submitted paperwork to participate in a re-

-6-

evaluation process handled by the Mississippi Reevaluation Team, which the Plaintiffs hoped would result in a fair settlement offer. Exhibit "B" at pages 83, 101 and Exhibit "E" at Bates page 100120. But State Farm only offered $20,141.30, an amount which Mr. Spansel found insulting. Exhibit "B" at page 83 and Defendant's Memorandum in Support of Motion for Partial Summary Judgment at page 8. State Farm has not unconditionally tendered this amount, and still has issued **no payment** to the Plaintiffs under the homeowners' policy. See Exhibit "E".

18.    Since the initiation of the present litigation, Forensic Engineer Neil B. Hall has studied the Plaintiffs' property and concluded, based on his analysis of the weather conditions, review of physical data collected from the site, and his own knowledge, training, and experience, that "the building envelope was breached, the roof structure was removed and exterior walls collapsed prior to the rise of storm surge in this area." See Hall Report, attached as Exhibit "L" at pages 2, 4. Furthermore, he concluded that "[t]he building and its contents were economically destroyed prior to the rise of storm surge." *Id.*

19.    State Farm's experts have also all acknowledged wind damage to the Plaintiffs' property. Engineer William Dally acknowledged that the wind speed at the site "began to increase rapidly at around 2:00 AM CDT," that gusts at the property reached as high as 142 mph, and that the winds peaked at 10:30 AM CDT, about one hour prior to the arrival of the peak surge at 11:15 AM CDT. Exhibit "J" at page 5. He subsequently opined that, "wind could possibly have caused some comparatively minor damage early on in the storm...or could have contributed to the unraveling of the structure after the surge and waves had opened it up." See Exhibit "J" at page 12. Consulting Engineers William Hinson and Michael Matthews acknowledged that, "the high winds associated with the hurricane may have resulted in minimal roof surface damage." See Structures Group Report

attached as Exhibit "M" at page 21.[1]  Engineer Forrest Masters opined, based on his assumption that

the Plaintiffs had an asphalt shingle roof and that wind gusts at Plaintiffs' property only reached 95

mph, that Plaintiffs had as much as 20% roof damage.  See Masters Report, attached as Exhibit "N"

at page 3.

20.    Despite the acknowledgment of wind damage to Plaintiffs' property by Defendants'

own experts, Defendants still have not tendered any additional payments to the Plaintiffs.  See

Exhibit "E".

21.    Defendant's grossly inadequate adjustment of Plaintiffs' homeowners claim dealt a

tremendous blow to the Plaintiffs.  During his deposition, Charles Spansel described his hope that

State Farm would eventually come around but that he ultimately found the whole process to be

disappointing.  Exhibit "B" at pages 105-106.  He testified: "I - I think it's - it's a shame that I'm

in this – years afterwards still dealing with it. (Witness cries)...it is distressing to have to– I've never

sued anyone, ever.  I don't like the position that y'all have – have put me in."  Exhibit "B" at page

101.  Plaintiffs want to rebuild, but as Mr. Spansel testified, "until this is resolved, it's - it's - nothing

I can really proceed with good conscience."  Exhibit "B" at page 102.

22.    Defendant State Farm has paid Plaintiffs a total of only $148,400.00 (under the flood

policy) for their structure despite Charles Spansel's testimony that the house appraised for an amount

in excess of $300,000.00 before the Plaintiffs invested more than $100,000.00 to renovate the

property.  Exhibit "B" at pages 36, 44, 48, 107.  State Farm has paid the Plaintiffs only $100,000.00

for their personal property (under the flood policy) despite Charles Spansel's testimony that the

---

[1]Albeit Consulting Engineers Hinson and Matthews reached this opinion without ever
having visited the Spansels' property and under the mistaken belief that Plaintiffs' home
comprised only one-story.  Exhibit "M" at page 1.

Adjustor told him he had "more than enough" to reach the flood policy limits for contents and testimony by Janet Spansel that the home was predominantly furnished with new contents.  Exhibit "B" at page 36, 81 and Exhibit "F" at page 44.  Defendant State Farm has not paid Plaintiffs anything for their other structures despite Charles Spansel's testimony that they spent $9,000 to $10,000 building the gazebo in 2005.  Exhibit "B" at 49-51.  Finally, Defendant State Farm has not paid the Plaintiffs anything for their jewelry despite Janet Spansel's testimony that she had a couple of necklaces and an opal ring in the home.  See Deposition of Janet Spansel, attached as Exhibit "N" at pages 18-19.

23.    To this date, Defendant State Farm, despite the findings of its own experts,  has not acknowledged the existence of any wind damage to the Plaintiffs' property.  See Exhibit "E".

24.    State Farm Claims Manager Terry Blaylock has testified to the following regarding State Farm's policy in the context of paying for wind damage:

Q.    So—so what you're telling me and the jury Mr. Blaylock is that if you could find discernible wind damage then you would pay for it?
A.    I believe that's what I said, yes.
Q.    Okay, and that's regardless of whether there was flood damage?
A.    Yes.
Q.    And according to this testimony on page 30 of your Tejador deposition, that's regardless of whether wind preceded—the wind damage preceded the flood damage or whether the wind damage happened concurrently with the flood damage, is that correct?
A.    If the wind damage is separate damage—if it's—I–it's separately identified as wind damage only, we—the policy would pay for the wind damage.

See Exhibit "O".

25.    To date, State Farm wholly failed to compensate Plaintiffs under the homeowners policy for their extensive losses during Hurricane Katrina.  State Farm's failure to adequately adjust the loss has delayed Plaintiffs' ability to rebuild their "paradise away from home."  See Exhibit "B"

at pages 102-103 and Exhibit "B" at page 10.

26.    Based upon: (1) the fact that State Farm denied Plaintiffs' claim before they even received their requested engineer's report; (2) the fact that State Farm reflected its decision to deny Plaintiffs' homeowners claim before an adjustor ever visited the Spansels' property; (3) the fact that the Defendants still have not tendered any payment to the Plaintiffs under the homeowners policy despite acknowledged wind damage by Defendants' own experts; and (4) State Farm's failure to follow its own internal policy- State Farm's Motion should be denied.

## III.    **BURDEN OF PROOF**

27.    The Defendants, as movants, bear a significant burden.  Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970);  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999).  The initial burden is on the moving party to identify those portions of the record that demonstrate that there is no evidence to support the non-movant's case and that, as a matter of law, the moving party must prevail.  *Celotex Corp.*, 477 U.S.at 323, 325 (1986).   The movant also has the burden of persuasion. This burden is a stringent one which always remains with the moving party. *Id* at 477 U.S. 317, 330-33*; Adickes*, 398 U.S. at 157-61.

28.    Disputes over facts that might affect the outcome of the case under the governing law will preclude the entry of summary judgment.  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*.  "[T]he

material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required

to be resolved conclusively in favor of the party asserting its existence; rather all that is required is

that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge

to resolve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz. v. Cities*

*Service Co.*, 391 U.S. 253, 288-289 (1968). Ultimately, a motion for summary judgment should not

be granted "unless the entire record shows a right to judgment with such clarity as to leave no room

for controversy and establishes affirmatively that the adverse party cannot prevail under any

circumstances." *Gibson v. Henderson*, 129 F.Supp.2d 890, 897 (M.D.N.C. 2001).

29.    Applying this standard, there is a genuine factual dispute as to the cause of the loss,

whether State Farm properly inspected the loss, and whether State Farm had a reasonable basis to

deny the loss.

## IV.    PLAINTIFFS' CLAIMS FOR BREACH OF FIDUCIARY DUTY

30.    Defendant, State Farm, states that it is entitled to Summary Judgment on Plaintiffs'

claims for breach of fiduciary duty. See State Farm Memorandum, pg. 20. Plaintiffs have made no

claims against Defendant State Farm for breach of fiduciary duty. Plaintiffs are aware that the

insurance company itself is not in a fiduciary relationship with the insured. Plaintiffs' claims for

breach of fiduciary duty were against Defendant Steve Saucier for his role as agent for Defendant

State Farm. Plaintiffs alleged that Saucier failed to truthfully and completely advise them on

insurance matters, inducing Plaintiffs to purchase a policy that they reasonably believed to be

sufficient to cover losses to their home and additional property therein in the event of a hurricane

such as that of Hurricane Katrina. Because Plaintiffs brought no claim against Defendant, State

Farm, for breach of fiduciary duty, State Farm is not entitled to summary judgment on this issue.

In the event that this Court deems that Plaintiffs brought a claim against Defendant State Farm for breach of fiduciary duty, Plaintiffs would confess that claim for the sake of clarity.

## V.      PLAINTIFFS' CLAIMS UNDER MISS. CODE ANN.§ 83-13-5

31.      Plaintiffs alleged in Count 12 of their Complaint that it would be in the best interest of the public policy of the State of Mississippi if Miss. Code Ann.§ 83-13-5, Mississippi's "Valued Property Statute," was extended to reach a situation such as the present one where the building or structure on the insured's property is totally destroyed by a cause other than fire.  Upon further review of the Mississippi's "Valued Property Statute" and the case law pertinent thereto, Plaintiffs would agree that they have no claim against State Farm under Miss. Code Ann.§ 83-13-5.  Therefore, Plaintiffs would likewise confess said claim.

## VI.      EXTRA-CONTRACTUAL OR PUNITIVE DAMAGES

32      The Plaintiffs would show that State Farm's inspection and adjustment of the claim is suspect at best and summary judgment is not warranted as to the Plaintiffs' claim for punitive or extra-contractual damages.  For the following reasons, State Farm's motion should be denied: (1) State Farm misstates the level of proof Plaintiffs must demonstrate to overcome a summary judgment motion on this issue; (2) State Farm ignores facts and case law crucial to a ruling on this motion; and (3) a ruling on this issue is premature both procedurally and substantively.

33.      Mississippi case law provides the standard for seeking punitive and extra-contractual damages against insurers.  The duty of insurers is to "perform an adequate investigation and make a reasonable, good faith decision based on that investigation."  *Liberty Mutual Ins. Co. v. McKneely*, 862 So.2d 530, 535 (Miss. 2003).  Insurers may be liable for punitive damages for denying a claim in bad faith.  *Id*.  Insurers may also be liable for extra-contractual damages, "where the insurer lacks

an arguable basis for delaying or denying a claim, but the conduct was not sufficiently egregious to justify the imposition of punitive damages." *Essinger v. Liberty Mutual Fire Insurance Company*, 534 F.3d 450, 451 (5th Cir 2008).

### A. Burden of Proof

34.    While State Farm pays lip service to the burden of proof the Plaintiffs must demonstrate to survive a motion for summary judgment on this issue, State Farm repeatedly attempts to confuse this Court by stating that the Plaintiffs must have clear and convincing evidence – *in support of their Summary Judgment response* – that the insurers had no arguable or reasonable basis for denial of the Plaintiffs' claim and that the insurer denied the claim in a willful or malicious manner and/or acted in reckless or gross disregard for the insureds' rights. State Farm Memorandum, pg 12-13.

35.    While it may be true that Plaintiffs would have a clear and convincing burden of proof on the issue of punitive damages *at trial*, such burden does not exist at the summary judgment stage of litigation.  At this point, Plaintiffs must merely demonstrate that they have advanced enough circumstantial evidence to take [their] claims "out of the realm of mere conjecture and plant them in the solid ground of reasonable inference" to overcome a motion for summary judgment. *Thomas*, 233 F.3d at 330 (internal quotations omitted).

36.    Under the Plaintiffs' bad faith failure to investigate claim, they simply must show that sufficient genuine issues of material fact exist to show that State Farm's acts and omissions went further than mere negligence and amounted to gross negligence and/or an intentional tort. *Lewis v. Equity National Life Ins. Co.*, 637 So.2d 183 (Miss. 1994).  And as Judge Senter has directed regarding the court's analysis of a Fed.R.Civ.P Rule 56 Motion relating to punitive and extra-

contractual awards: "it is not for the Court to weigh the evidence or evaluate the credibility of witnesses, but must consider the evidence submitted by the parties in support of and in opposition to the motion and grant all reasonable inferences to the non-moving party...[T]hat evidence and those inferences drawn from it are viewed in the light most favorable to the non-moving party." *Payment v. State Farm Fire and Casualty Company*, 2008 WL 5003077 (S.D. Miss. November 2008).

37.     As will be more thoroughly demonstrated in the following sections, Plaintiffs would respectfully submit that sufficient evidence exists to enable a jury to find that State Farm's acts and omissions in failing to adequately investigate Plaintiffs' claims amounted to an intentional tort and constitutes gross negligence and bad faith warranting punitive damages.  Furthermore, sufficient evidence exists to enable a jury to find that State Farm denied the Plaintiffs' claim in bad faith- lacking an arguable basis for denying the claim and their denial was grossly negligent in disregard of the insured's rights- the requirements for bad faith denial of an insurance claim set forth in *U.S. Fid. & Guar. Co. v. Winnginton*, 964 F.2d 487, 492 (5th Cir. 1992).

**B.  Bad Faith Failure to Investigate**

38.     "[A]n insurance company has a duty to the insured to make a reasonably prompt investigation of all relevant facts." *Bankers Life and Cas. Co. v. Crenshaw*, 483 So.2d 254, 276 (Miss.1986). "An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim." *Id* at 272; see also *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620 (Miss. 1988) ("Mississippi law does indeed impose a duty upon the insurance company to promptly and fully investigate any claim").  In the context of Katrina litigation, the Mississippi Surpreme Court has held that, "An adjuster has a duty to investigate all relevant information and make a realistic evaluation," and failure to do so rises to an independent tort. *Fonte v. Audubon Insurance*

-14-

*Company* 8 So. 3d 161 (Miss. 2009)  When failure to adhere to such duty to promptly and fully investigate reaches the level of an independent tort, punitive damages may be warranted.  *Lewis v. Equity National Life Ins. Co.*, 637 So.2d 183 (Miss. 1994); *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 293 (Miss. 1992).

39.    Defendant State Farm claims that its investigation of Plaintiffs' homeowners claim was prompt and adequate because it issued payment to the Plaintiffs for their flood claim, called the Plaintiffs several times, and hired experts after the initiation of the present suit.  See Defendants Memorandum at page 15.  Plaintiffs will demonstrate the inadequacy of such an investigation, even when measured against State Farm's own internal policy.

### 1.    Facts Demonstrating State Farm's Bad Faith Failure to Investigate

40.    Facts and circumstances demonstrating State Farm's inadequate investigation include the following.  First, State Farm summarily denied Plaintiffs' wind claim without waiting to receive its requested engineer's report.  Second, State Farm canceled its request for an engineer's report to determine the cause of the Plaintiffs' loss without any kind of explanation.  Furthermore, State Farm's adjustor indicated his intention to deny the Plaintiffs' wind claim before he ever conducted a site investigation of the Plaintiffs' property.  He also rejected Plaintiff Charles Spansel's offer to meet with him.  State Farms' Activity Log reflects no description specific to the condition of the Plaintiffs' own property to support its determination that Plaintiffs' loss was in no way caused by wind (e.g. no reference to the condition of the trees on the Plaintiffs' property, only that there were limbs and debris hanging in some of the trees "in this area").  Exhibit "E" at Bates page 100120.  Furthermore, the Adjustor reached the conclusory decision that "there is no question that [the subject property] was washed away by water" because of "the investigation of the other risks I have

reviewed in the area." Exhibit "E" at Bates page 100120. In sum, State Farm's investigation was wholly inadequate to determine whether the Plaintiffs' property losses were covered under their State Farm Homeowner's policy.

### 2. Wind/Water Claim Handling Protocol

41.    On September 13, 2005, just weeks after Katrina hit land, Stephan Hinkle, State Farm's claim consultant over Katrina-related property and casualty claims, sent to his claims adjusters what has come to be known as the Wind/Water Claim Handling Protocol (hereinafter referred to as "Wind/Water Protocol"). See Exhibit "P". The Wind/Water Protocol was designed as an official guideline for State Farm claims adjusters and team managers to utilize in assessing property damages incurred to State Farm insured properties as a result of Hurricane Katrina. Specifically, it mandated the policies and procedures which claims adjusters and team managers were to employ to investigate insureds' claims to determine what coverage, if any, an insured would allegedly have depending on the amount of damage determined to have resulted from wind and/or water. As it related to the investigation of coverage of these claims, the Wind/Water Protocol stated:

> Each claim should be handled on its merits. A causation investigation should be conducted and appropriate claim file documentation is required. Any available information should be considered in making a coverage determination. This information will include, but is not limited to:
>
> •    Evidence gathered at the on-site inspection. This includes documentation such as water lines, an examination of the debris and an analysis of the physical damage to the structure.
> •    Evidence gathered at neighboring locations.
> •    Data obtained from reports describing damage to the area.
> •    Information from witnesses and policy holders.
> •    Input from experts that may be retained to provide guidance

### 3.    Failure to Follow Internal Policy

-16-

42.    Not only do the facts independently indicate an insufficient investigation of the Plaintiffs' claim as demonstrated above, State Farm also failed to follow its own policy as set forth in the Wind/Water Protocol.  Evidence that an insurer did not follow its own procedure is relevant to the adequacy of the investigation of an insureds' claim.  *Crenshaw*, 483 So.2d at 270.  In *Crenshaw*, a case wherein the insurer was found to have acted in bad faith in failing to properly investigate, the insurer had in place investigative procedures that set forth how an investigation into an insured's claim should be conducted.  *Id*.  After listing verbatim the criteria involved in investigating an insured's claim, the Court flatly stated,  "The company did *none* of this."  *Id* (emphasis in original).  Similarly, in the present case, State Farm had set forth the procedures by which Katrina claims were to be adjusted and, likewise, State Farm failed to follow the mandates of the Wind/Water Protocol.

43.    The Protocol states in part that evidence should be gathered at the on-site inspection, which should include "an analysis of the physical damage to the structure."  See Wind/Water Protocol, attached as Exhibit "O".  Yet as demonstrated above, the State Farm Adjustors failed to consider the specific damage to the residence and its cause, instead citing non-specific references concerning "the area" deny the wind claim.   See Exhibit "E".  Moreover, the State Farm Activity Log reflected the adjustor's intent to deny the claim before he even inspected the property.  Exhibit "E".

44.    The Protocol also provides that information to consider as part of the investigation should include "information from witnesses and policy holders."  Yet State Farm Adjustor rejected Charles Spansel's offer to meet with him, indicating that it was "unnecessary."  Exhibit "B" at page 91.  Nor did Avery Murrah indicate that he interviewed any of Plaintiffs' neighbors or other

witnesses of Katrina in the area.  Exhibit "E".  Review of the activity logs for the homeowners'

claims also reflect a notable lack of photos- inconsistent with the Wind/Water Protocol's emphasis

on "appropriate claim file documentation."  See Exhibits "E" and Exhibit "O".  There is no mention

of any photographs taken by a State Farm representative until October 22, 2005, after Adjustor

Murrah indicated his intent to deny the claim.  Exhibit "E".  Because State Farm failed to follow its

own stated policy, there is sufficient evidence to show that summary judgment on this issue is

inappropriate and that the question of bad faith failure to investigate should be submitted to a jury.

### 4.    State Farm's Burden

45.    Furthermore, State Farm in its so-called investigation attempted to shift the burden

onto the Plaintiffs to prove the extent of their wind damage.   See Defendants 10/5/2005

Correspondence in the Homeowners File, Exhibit "E" at Bates pages 100044-100046 and 100040-

10004 and Exhibit "B" at pages 110 to 112.  Yet this Court made it clear that the "burden of proof

requires State Farm to establish, by a preponderance of the evidence, what portion of the total loss

is attributable to flood damage and is therefore outside the coverage"- it is not the other way around

as the Defendants would like to think.  See *Broussard v. State Farm Fire and Casualty Company*,

2007 WL 113942 (S.D.Miss. 2007), reversed on other grounds by *Broussard v. State Farm Fire and

Casualty Company*, 523 F.3d 618 (5th Cir. 2008).

### C.  Bad Faith Denial of Insurance Claim

46.    As previously stated, a Plaintiff may recover punitive damages for bad faith denial

of an insurance claim by showing the insurer denied the claim without an arguable or legitimate basis

and with malice or gross negligence in disregard of the insured's rights.  *Wigginton* at 492.  State

Farm cites its arguable bases to deny the claim as "the damage to the house, damage to structures in

the vicinity, the proximity to open water, and the high surge flooding in the area." See Defendants'
Memorandum at page 12. The Plaintiffs will demonstrate that State Farm is mistaken- there is no
arguable basis for refusing to pay **anything** for Plaintiffs' contents when Defendants have
acknowledged roof damage to the Plaintiffs' dwelling.

      1.        **Arguable Basis to Deny**

      a.        **Lack of an Arguable Basis**

    47.    State Farm points to evidence that flood water inundated the house as grounds for
denying Plaintiffs' claim. See Defendants' Memorandum at page 14. Yet this Court has clearly
stated that a Plaintiff's acceptance of full benefits under his flood policy in no way forecloses
damage from a covered loss. Payment, 2008 WL 5003077 at *1. Furthermore, State Farm's own
expert witnesses have acknowledged the likelihood of wind damage to the Plaintiffs' property. See
Exhibits "J", "M", and "N". Additionally, Defendant State Farm reflected its intention to deny the
Plaintiffs' claim before it ever conducted a site inspection or received the engineer's report it
requested. Exhibit "E". And State Farm still has made **no payment** to the Plaintiffs under their
homeowners policy. See Exhibit "E". There is no arguable basis for determining there has been no
wind damage before a site inspection has ever been conducted and before receiving a requested
engineering report.

    48.    Furthermore, there is no arguable basis for failing to subsequently tender any payment
for wind damage Defendants' own expert witnesses have acknowledged subsequent to the initiation
of the present lawsuit. This Court has clearly indicated that an insurance company's duty to
promptly pay a legitimate claim "does not end because a lawsuit has been filed against it for
nonpayment of it." *Bossier v. State Farm Fire and Casualty Company*, 2009 WL 3049282 (S.D.

Miss. Sept. 2009).

49.    Defendants cite the Fifth Circuit's decision in *Broussard v. State Farm Fire and Casualty Company*, 523 F.3d 618 (Fifth Cir. 2008) to bolster its position that State Farm had an arguable basis to deny the Plaintiffs' claim.  See Defendant's Memorandum at page 14.  Yet State Farm's conduct in the present case is even more egregious than the situation in *Broussard*.  The Court in *Broussard* found there was an arguable basis to deny the claim based on the adjustor's inspection of the trees around the Plaintiffs' property.  At least the adjustor in *Broussard* visited the Broussards' property before denying their claim.  State Farm Adjustor Avery Murrah reflected his intention to deny the Spansels' property before he ever visited their property.  Furthermore, in *Broussard*, there was no indication that a request for an engineer was pending prior to the denial of the Broussards' claim.

50.    The Mississippi Supreme Court recently found sufficient evidence to support a claim of gross negligence by the Defendants where the Defendants' adjustor was ordered not to pay 100% of any claims along U.S. 90 in the Gulfport, Biloxi, Pass Christian area.  *Fonte v. Audubon Insurance Company*, 861 So. 3d 161(Miss. 2009).  It is respectfully submitted that this case presents similarly egregious facts: Defendant State Farm failed to consider any specifics concerning the damage to Plaintiffs' property prior to indicating its intent to summarily deny the Plaintiffs' claim.  Its own internal records evinces its intentions to deny the claim prior to its investigation: "based upon flood being cause of loss" and "close without payment".  Furthermore, it has steadfastly refused to pay anything under the policy despite acknowledgment by its own experts that there was in all likelihood some wind damage to the Spansels' property.  See Exhibit "E", "J", "M", and "N".

-20-

b.    **Determination of Bad Faith**

51.    State Farm, appreciating the deficiencies of its investigation, argues further that even if the Plaintiffs can show that the investigation was negligent, State Farm's actions and omissions would not amount to bad faith.  See State Farm Memorandum at p. 16.  State Farm conveniently ignores this Court's refusal to grant summary judgment as to Plaintiffs' claim for negligence and bad faith based on factually identical grounds.  See *Remel v. State Farm Fire and Casualty Company*, 2009 WL 482131.  This Court stated therein:

> I need go no further in the claim file to see that a final decision to deny the plaintiffs' claim was made before the State Farm adjustor in charge of the file received the engineering report State Farm had requested...[T]he fact that it was made-while an engineering report had been requested and not yet received- is sufficient evidence to create a genuine issue of material fact on the questions of whether State Farm was acting with reasonable care and operating in good faith."  *Remel*, 2009 WL 482131 at *2.

There is a sufficient demonstration of bad faith to survive a Motion for Summary Judgment on for punitive damages where the insurance company makes the decision to deny before receiving a requested engineer's report.

52.    State Farm also ignores pertinent case law dictating that, even if State Farm can point to some arguable basis, that the issue of bad faith may still be put before a jury.  *Lewis v. Equity Nat. Life. Ins. Co.,*  637 So.2d 183, 185 (Miss. 1994); *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1186 (Miss. 1990)  ("Mississippi law has evolved to a point of recognition that submission of the punitive damages issues may be submitted – notwithstanding the presence of an arguable basis.")  In *Lewis*, a case involving the adequacy of an insurer's investigation into an insured's claim, the Court stated that:

> In those cases where there is a question that the mishandling of a claim or the breach

of an implied covenant of good faith and fair dealing may have reached the level of an independent tort-*despite the possibility of an arguable basis* for denying the claim, the *Williams* Court outlined the following procedure:

> (1) the issue should be submitted to the jury for resolution; and (2) if the jury resolves the issue against the insurer; (3) the trial judge may upon post-verdict motion and upon reflection find: (a) that the evidence is not supportive of the verdict; (b) that issue should not have been submitted to the jury; and (c) that j.n.o.v. or a new trial should be granted.

*Lewis* 637 So.2d at 185, quoting *Williams*, 566 So.2d at 187 (emphasis added).

53.    In another case where the Mississippi Supreme Court examined the question of a bad faith denial of claim, the Court, while finding that the insurer did indeed have a legitimate or arguable basis for denying the insured's claim, determined that the jury was properly allowed to consider and conclude that the insurer's failure evidenced bad faith and that punitive damages were proper because evidence also suggested that there were questions of fact regarding the adequacy of the insurer's investigation. *Stewart v. Gulf Guaranty Life Ins. Co.*, 846 So.2d 192 (Miss. 2002). Thus, Mississippi case law is clear that even where an insurer can point to a legitimate or arguable basis for denying an insured's claim, that where there is evidence that tends to show that the insurer's investigation was not made in good faith, summary judgment should be denied.

54.    The foregoing cases make another point that expose the error in State Farm's argument, to wit: that this issue is grossly premature. As stated *supra* in *Lewis*, *Williams*, and *Stewart*, when there is a fact question as to the level of adequacy of the insurer's investigation, it is appropriate to submit that question to the jury. At that point, the jury must first find that the insurer wrongly denied the claim before the jury even considers the question of whether the insurer's actions amounted to bad faith or to an independent tort. Then, even if the jury finds that State Farm's

actions rose to the level of an independent tort, a court "may upon post-verdict motion and upon reflection find: (a) that the evidence is not supportive of the verdict; (b) that issue should not have been submitted to the jury; and (c) that j.n.o.v. or a new trial should be granted." *Williams*, 566 So.2d at 187. Thus, because this Court will have ample opportunity to make a ruling on this issue at a later point in time when all of the facts and evidence are before it, it is respectfully submitted that a ruling at this point in the litigation would be improvident.

### 2.    Showing of Actual Malice or Gross Negligence

55.    State Farm argues that Plaintiffs' bad faith failure to investigate Plaintiffs' claim should be denied because Plaintiffs cannot make the additional showing that State Farm acted with actual malice or gross negligence. Once again, State Farm has ignored pertinent language of the Mississippi Supreme Court on this issue. In *Lewis* 637 So.2d at 186, quoting *Merchants Nat. Bank v. Southeastern Fire Ins. Co.*, 751 F. 2d 771, 775 ftn.3 (5th Cir. 1985), the Court explained that:

> [R]equiring a trial judge to determine whether there is sufficient evidence of wrongdoing to place the issue of punitive damages before the jury 'would often be superfluous since an insurer's failure to pay a claim without an arguable reason is usually tantamount to wilful or grossly negligent refusal to pay.'

56.    In other words, if State Farm is found by a jury to have denied the Plaintiffs' claim without an arguable reason, and the conduct of State Farm has been deemed by a judge and a jury to go beyond mere negligence and to the level of an independent tort, then a showing of gross negligence clearly would have been made. As explained *supra*, State Farm violated its own stated policy, prematurely denying Plaintiffs' claim without any record of investigation specifically considering the damaged areas of the residence, investigations by adjustors who refused to acknowledge any wind damage to Plaintiffs' dwelling notwithstanding extensive roof damage and

who failed to interview eye witnesses in the area, and also failed to pay any amount to the Plaintiffs under the contents coverage of their homeowners' policy despite acknowledged wind damage to both the roof of the dwelling.  It is respectfully submitted that the foregoing facts are sufficient to demonstrate that summary judgment is inappropriate and a jury should be able to consider all of the facts and render a conclusion.  By demonstrating State Farm's "gross or willful wrong,", Plaintiffs thereby demonstrate their entitlement to attorney fees.

## VII.    MISREPRESENTATION AND REFORMATION

57.    State Farm prematurely seeks Summary Judgment on the Plaintiffs' claims for misrepresentation and reformation.  Both causes of action allege fraud- that State Farm made numerous fraudulent misrepresentations to Plaintiffs, namely its representations that it had conducted an investigation upon which it reached the conclusion that the cause of the Spansels' loss was due entirely to flood.  See Spansels' Response to Interrogatories, attached as Exhibit "Q" at pages 6-7.

58.    State Farm's request for summary judgment on these matters is not ripe because the Mississippi Supreme Court has established that summary judgment is not an appropriate stage for disposition of allegations of fraud or misrepresentation because they are fact-intensive determinations.  *Great Southern National Bank v. McCullough Environmental Services, Inc*., 595 So.2d 1282, 1289 (Miss. 1992); see also the *Encyclopedia of Mississippi Law*, § 21:55 (2008).  This Court should therefore deny Defendants' motion as it relates to the claims of Fraudulent Misrepresentation and Reformation.

59.    Negligent misrepresentations requires a showing that there was 1) a misrepresentation (or omission) of a fact; 2) that the misrepresentation (or omission) was material or significant; 3) that the misrepresentation (or omission) was the product of negligence, i.e. that the person making the

-24-

representation or omission failed to exercise reasonable care; 4) that the person to whom the representation (or omission) was made reasonably relied upon the representation (or omission); and 5) that the person to whom the representation (or omission) was made suffered damages as a direct and proximate result of that reasonable reliance. *Berkline v. Bank of Mississippi*, 453 So.2d 699 (Miss. 1984).

60.    In the present case, Defendant State Farm made a material misrepresentation by sending out a denial letter on October 24, 2005 (Exhibit "E" at Bates page 100040), informing the Plaintiffs that it determined the damage to their dwelling was caused only by flood water based upon its site inspection, investigation, and discussion with the Spansels. *Id*.  Yet the claim file clearly indicated that the decision had been made to deny the Plaintiffs' claim before they ever inspected the property and before it reviewed the engineer's report it requested.  Exhibit "E".  This representation was material because it meant Plaintiffs would receive no benefits under their wind policy- which they believed would cover them in the event of a hurricane.  State Farm Adjustor Avery Murrah, as well as those supervising her, failed to exercise reasonable care when they proceeded to deny Plaintiffs' claim despite the fact that no engineer had been retained and that the results were inconsistent with the snapped trees in the yard.  With this information, a reasonable person would- and should have- recognized the impact of the wind damage on the property to avoid unnecessary anguish for the insureds.  Plaintiffs reasonably believed, based on the denial letter, that State Farm would not recognize that any wind damage occurred to their property and accordingly would receive no proceeds under the wind policy.  This upsetting information caused mental anguish to the Spansels.  Therefore Plaintiffs' should defeat any summary judgment motion for negligent misrepresentation.

## VIII.  EMOTIONAL DISTRESS

61.    Defendants' summary judgment motion regarding the claim for emotional distress should also be denied.  Under Mississippi law, a Plaintiff may recover damages for mental or emotional distress in cases involving only ordinary negligence and resulting in no bodily injury if this type of damage is foreseeable.  *Adams v. U.S. Homecrafter, Inc.*, 744 So.2d 736 (Miss. 1999); *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290 (Miss. 1992).  Plaintiffs may also recover damages for mental and emotional distress where there has been reckless, grossly negligent, or deliberate misconduct.  *Mississippi Valley Gas Co. v. Estate of Walker*, 725 So.2d 139,m 148 (Miss. 1998). Plaintiffs allege both negligence and bad faith of the Defendants.  See Exhibit "A".

62.    The Mississippi Supreme Court specifically enunciated the availability of this claim in a breach of contract action, stating that, "[i]t is now undisputed that under Mississippi law a plaintiff can assert a claim for mental anguish and emotional distress in a breach of contract action." *University of Southern Mississippi v. Williams*, 891 So.2d 160 (Miss. Nov. 10, 2004).   The Court went on to clarify the requirements to recover: "[a] Plaintiff must show (1) that mental anguish was a foreseeable consequence of the particular breach of contract, and (2) that he or she actually suffered mental anguish." *University of Southern Mississippi*, 891 So.2d 160 at 173.

63.    Contrary to the assertions of the Defendants, Plaintiff Charles Spansel can establish that he suffered mental anguish and that his mental anguish was foreseeable.  Mr. Spansel's visible anguish during the deposition demonstrated the emotional toll State Farm's behavior has exerted on him.  See Exhibit "B" at pages101-103.  Defendant State Farm's conduct made Plaintiff's mental distress foreseeable.  After all, despite winds in excess of 100 mph at Plaintiffs' property, State Farm has repeatedly denied the existence of any wind damage to the Plaintiffs' property.  State Farm's

failure to tender any proceeds under the homeowners policy has to date, prevented the Plaintiffs from rebuilding their "paradise away from home."

64.    The foregoing facts indicate that Plaintiffs satisfy the requirements for an emotional distress claim. Furthermore, Plaintiffs' claim has not been time-barred. Negligent infliction of emotional distress is not subject to the one-year time bar. See *Bellum v. PCE Constructors*, 407 F.3d 734 (Fifth Cir. 2005). Also, the one-year time bar for intentional infliction of emotional distress has been tolled because of the continuing nature of Defendant's tort: repeatedly refusing to acknowledge the existence of any wind damage to Plaintiffs' house and thereby withholding all payment under the policy. See *McCorkle v. McCorkel*, 811 So.2d 258 (Miss. Ct. Appeals 2001).

## IX.    REPLACEMENT VALUE

65.    Defendants seek to prevent Plaintiffs from seeking the replacement costs available under their policy on grounds that Plaintiffs failed to rebuilt within two years after the date of the loss. See Defendants' Memorandum at page 21. This Court established in *Ross v. Metropolitan Property and Casualty Insurance Company* that replacement cost coverage "has the potential to allow a recovery greater than the actual cash value of the insured property at the time of loss...This replacement cost coverage does not increase the liability limits stated in the policy declarations, but it does eliminate any deduction for 'physical deterioration and depreciation including obsolescence' in the event the insured elects to replace the insured property." 2008 WL 4861698 (S.D.Miss. 2008). This Court has also enunciated that Plaintiffs' actual loss is, "the maximum recovery he may receive from all applicable policies of insurance for both his dwelling and person property." *Tejedor v. State Farm Fire and Casualty Company*, 2006 WL 3257526 (S.D. Miss. 2006).

66.    Plaintiffs assert that their right to claim replacements costs should not be impeded.

Defendants accuse Plaintiffs of failing to rebuild within two years of the loss yet Defendants have tendered no payment to the Plaintiffs under the homeowners policy with which Plaintiffs can rebuild. Plaintiffs should still be entitled to recover the replacement cost according to basic contract theory. That is: a party's material breach of contract excuses further performance by the other party. See *Favre Property Management, LLC v. Cinque Bambini*, 863 So.2d 1037 at 1044 (Miss. Ct. Appeal, Jan 20, 2004). Applied to the present situation, Defendants materially breached the contract to provide insurance for a covered loss by denying Plaintiffs' claim on October 24, 2005 by inadequately adjusting Plaintiffs. That denial excused Plaintiffs' obligation to rebuild within two years. Plaintiffs may therefore continue to pursue the replacement cost coverage Plaintiffs maintained at the time of Katrina.

67. Plaintiffs additionally request relief from the local rule requiring a separate Memorandum of Law in support of the response. It is submitted that sufficient facts and law are contained in this response to fully and adequately address the issues before the court.

## XI. **CONCLUSION**

WHEREFORE PREMISES CONSIDERED the Plaintiffs respectfully move that this Court deny State Farm's Partial Motion for Summary Judgment, and furthermore, enter any and all relief necessary to accompany such relief.

Respectfully submitted, this the 2nd day of October, 2009,

PLAINTIFFS, CHARLES and JANET SPANSEL

BY:_____*s/ Rose M. Hurde*r_____
ROSE M. HURDER

-28-

**OF COUNSEL:**

John F. Hawkins, Esq., MS Bar Roll No. 9556
C. Edward Gibson, Esq., MS Bar Roll No. 100640
Rose M. Hurder, Esq., MS Bar Roll No. 103040
HAWKINS, STRACENER & GIBSON, PLLC
544 Main Street
Bay St. Louis, MS 39520
Ph. (228) 469-0785; Fx. (228) 466-9233

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the above and foregoing *Response to Defendant State Farm's Motion for Summary Judgment* with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record as indicated below:

H. SCOT SPRAGINS
HICKMAN, GOZA & SPRAGINS, PLLC
Post Office Drawer 668
Oxford, MS 38655-0668

I further certify that there are no non ECF users among counsel.

SO CERTIFIED, this the 2nd day of October, 2009,

*s/ Rose M. Hurder*
ROSE M. HURDER