UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES SPANSEL and JANET SPANSEL** § § § | | **PLAINTIFFS** |
| **V.** § § | | **CAUSE NO. 1:08cv1516-LG-RHW** |
| **STATE FARM FIRE AND CASUALTY CO. and JOHN DOES 1-10** § § | | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is Defendant State Farm Fire and Casualty Co.'s Motion for Partial Summary Judgment [35]. Plaintiffs Charles and Janet Spansel brought this bad faith action arising from the Hurricane Katrina damage to their vacation home. State Farm argues (1) it had a legitimate, arguable basis for denial of the claim, (2) State Farm did not act willfully, maliciously, with gross negligence, or in reckless disregard, (3) the Fifth Circuit has rejected the declaratory judgment claims[1], (4) the Spansels did not reasonably nor detrimentally rely on State Farm's alleged misrepresentations, (5) the Spansels cannot recover replacement costs, (6) the intentional infliction of emotional distress claims are time-barred and (7) without merit, (8) there is no fiduciary duty, (9) the Mississippi Valued Property Statute does not apply, (10) the Spansels are not liable to third parties, (11) there is a contract, and (12) the Spansels have adequate remedies at law. The Court has considered the parties' submissions and the relevant legal authority. The motion is granted as to the claims for declaratory judgment on the water exclusion

---

[1]Before State Farm's Reply was filed, the Mississippi Supreme Court rejected the Fifth Circuit's *Erie*-guess on anti-concurrent clauses. *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, (¶49) (Miss. 2009). State Farm was an *amicus curiae* in that case. *Id.* at (¶4) n.1.

and hurricane deductible, misrepresentation, intentional infliction of emotional distress, breach of fiduciary duty, Mississippi Valued Property Statute, indemnity, unjust enrichment, reformation, and specific performance. The remainder is denied.

## FACTS AND PROCEDURAL HISTORY

The Spansels are Louisiana residents who own land along Bay St. Louis in Pass Christian, Mississippi. On the property, at the time of Hurricane Katrina, was their two-story vacation home, gazebo, shed, and pier and boathouse extending into the bay. When the Spansels purchased the property in 2000, the home appraised for $319,000. The couple spent $100,000 since that time renovating the home, and then they constructed the gazebo and shed. The Spansels insured the dwelling, other structures, and personal property *via* flood and homeowner's policies. The flood policy had limits of $148,400 for the home and $100,000 for contents. The homeowner's policy had limits of $138,300 for the home, $13,830 for dwelling extension, $103,725 for contents, no limit for loss of use, and $2,500 for jewelry.

On August 29, 2005, Hurricane Katrina struck the Mississippi Gulf Coast, approximately twenty-seven miles west of the Spansels' property. Katrina destroyed the gazebo, shed, and severely damaged the home. All that was left was the home's concrete slab, sections of the second-story porch, the back exterior stairs, and some remnants of cinder block walls. The Spansels made claims under both policies. State Farm paid the limits on the flood policy and denied coverage under the homeowner's policy.

Pursuant to an agreement with the Mississippi Department of Insurance, State Farm sent notification to the Spansels that they could participate in a re-evaluation and mediation of the homeowner's claim. State Farm's re-evaluation of the claim was $20,141.30. Mr. Spansel told

State Farm he was insulted, and the amount was never paid. The Spansels initiated this lawsuit against State Farm and agent Steve Saucier for claims under the Mississippi Valued Property Statute, negligence, gross negligence, failure to procure[2], breach of fiduciary duty, breach of contract, bad faith, infliction of emotional distress, misrepresentation, estoppel and detrimental reliance, failure to monitor and train agents, declaratory judgment, indemnity, unjust enrichment, reformation, specific performance, punitive damages, constructive trust, attorney fees and expenses, and pre and post judgment interest. The Spansels voluntarily dismissed Saucier. State Farm seeks partial summary judgment for the claims on the Mississippi Valued Property Statute, bad faith, breach of fiduciary duty, intentional infliction of emotional distress, misrepresentation, declaratory judgment, indemnity, unjust enrichment, reformation, and specific performance.

## DISCUSSION

S<span>TANDARD FOR</span> M<span>OTION FOR</span> S<span>UMMARY</span> J<span>UDGMENT</span> P<span>URSUANT TO</span> R<span>ULE</span> 56:

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F<span>ED</span>. R. C<span>IV</span>. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at

---

[2]This claim was only against Saucier.

trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

BAD FAITH

First, State Farm argues that the Spansels cannot prove their bad faith claim. They respond that State Farm denied their claim before State Farm knew what caused their loss and did so in such a manner as to warrant punitive damages.

"[A] bad faith refusal claim is an 'independent tort' separable in both law and fact from the contract claim asserted by an insured under the terms of the policy." *Hartford Underwriters Ins. Co. v. Williams*, 936 So. 2d 888, 895 (¶21) (Miss. 2006). To prove a claim for bad faith punitive damages, the Spansels must show (1) State Farm lacked an arguable or legitimate basis for denying the claim, and (2) State Farm committed a willful or malicious wrong, or acted with gross and reckless disregard of the Spansels' rights. *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 634 (¶104) (Miss. 2007). On the other hand, extra-contractual damages, including attorney fees, are available when only the first prong is shown. *Essinger v. Liberty Mut. Fire Ins. Co.*, 534 F.3d 450, 451 (5th Cir. 2008). Extra-contractual damages include emotional distress, "attorney fees and legal expenses reasonably and necessarily incurred," inconvenience, accounting fees, and economic loss. *Allred v. Fairchild*, 916 So. 2d 529, 532-33 (¶¶9-12) (Miss. 2005) (discussing award of accounting fees under Rule 54(d) and *Veasley*); *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992); *Pioneer Life Ins. Co. of Ill. v. Moss*, 513 So. 2d 927, 931 (Miss. 1987) (Robertson, J., concurring). In *Veasley*, evidence that the insurance

company's bad faith caused plaintiff "worry, anxiety, insomnia, and depression" supported a jury award for emotional distress damages. *Veasley*, 610 So. 2d at 295.

State Farm "need only show that it had reasonable justifications, either in fact or in law, to deny payment." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008). The mere fact that State Farm's denial of coverage proves to be incorrect is insufficient to prove bad faith. *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (¶9) (Miss. 2003). However, State Farm has a duty to re-evaluate the Spansels' claim, even after the lawsuit was filed. *Broussard*, 523 F.3d at 629.

## I. LACK OF ARGUABLE OR LEGITIMATE REASON

State Farm argues that its legitimate arguable reason for denying the Spansels' claim was State Farm's determination that the loss was caused by flooding. The Spansels point to evidence that State Farm did not know what caused the loss, denied the claim without benefit of a site inspection or engineering report, and later acknowledged that some money is owed but has not unconditionally tendered any amount.

First, the parties disagree about when the denial took place. The Spansels argue it was on October 19, 2005, and State Farm argues it was October 24. On September 28, 2005, State Farm wrote the Spansels, "The damage to your property may have been caused by wind and water. We are continuing to investigate that portion of your loss caused by wind." (Compl. Ex. C at 1). State Farm reserved its rights and paid[3] policy limits on the flood policy for what State Farm termed "that portion of your loss clearly caused by water." *Id.* On October 3, State Farm

---

[3]There is conflicting evidence on the date on which the flood limits were paid. The letter indicates it was paid on September 28. Other evidence in the claim file indicates it was paid on October 3.

requested an engineer to determine the cause of loss. Three days later, State Farm again wrote the Spansels that it was continuing to try and determine what portion of the loss was caused by wind. On October 19, State Farm instructed the engineer, "Please cancel this assignment. . . . If you have already inspected this loss, do not write the report. Send your investigation material with your bill." (Def.'s Mot. Summ. J. Ex. I at 100042). No investigation material is in the file. On this same date, the adjuster recorded that he sent the Spansels a letter of denial "based upon flood being cause of loss and not an insured event. File ready to close without payment." *Id.* at 100121. He spoke with the Spansels on October 21. On October 22, the adjuster's supervisor Paula Roberts asked him, "Where are photos and logs of your investigation for this claim? We need proximity to water, etc. per investigation of wind and water protocols." *Id.* State Farm's wind and water protocol required an investigation be documented in the file to determine the wind versus water causation. He responded that he inspected the property and took pictures for the first time on October 22. He noted there was debris in trees 25 feet above grade. He continues:

> There was a GE washer . . . and . . . dryer. . . . [The home] was 100 feet from the water. . . . However, based upon investigation of the other risks I have reviewed in the area, there is no question that it was washed away by water reaching at least 25 feet above grade. I have talked with the Insureds and they understand the position S[tate] F[arm] is taking and why.

*Id.* at 100120. There is no evidence of what other risks in what defined area he reviewed nor when he reviewed them. State Farm management then agreed the home was "completely destroyed by storm surge" based solely on the home's "[c]lose proximity to Gulf as shown in photos." *Id.* There are no photos in the claim file provided to the Court. The photos that State Farm provides on summary judgment reveal that there is a tree limb projectile piercing the top of

6

the washing machine at about a forty-five degree angle. There is also an uprooted tree, a few felled trees, and several slanted trees.

This evidence, viewed in the light most favorable to the Spansels, tends to show their claim was denied on October 19, before an adjustor had set foot on their property, reviewed photographs of the loss, or received any data other than the property's location along Bay St. Louis. State Farm management affirmed this denial based solely on the property's proximity to the Gulf of Mexico. This creates question for the jury as to whether State Farm lacked a legitimate arguable reason for denial of wind coverage under the homeowner's policy.

Furthermore, the Mississippi Supreme Court reversed summary judgment in a similar situation. *Fonte v. Audubon Ins. Co.*, 8 So. 3d 161, 167 (¶16) (Miss. 2009) (modified *sub nom*, No. 2008-CA-00222-SCT, 2009 Miss. LEXIS 216, May 14, 2009). The homeowners' owned beachfront property in Pass Christian. *Fonte*, 8 So. 3d at 163 (¶2). The adjuster denied any wind damage to the first floor of their home solely because it was beachfront property and "it was assumed and believed that storm surge, or flood, created a significant part of the total damage" along Highway 90 in Pass Christian. *Id.* at 167 (¶13). "Further, [the adjustor] had no training in meteorology, structural engineering, civil engineering, or other expertise for differentiating between wind and water damage [nor] standard meteorological data, a consulting meteorologist, [n]or any other consulting expert." *Id.* Therefore, both the existence of a legitimate, arguable reason and the question of punitive damages were for the jury. *Id.* at (¶15). State Farm is not entitled to judgment as a matter of law on whether it lacked an arguable, legitimate reason for denial.

## II. WILFULNESS, MALICIOUSNESS, GROSS NEGLIGENCE, OR RECKLESS DISREGARD

Because there is evidence that State Farm denied the claim without any adjustment or investigation, a question of fact exists as to whether State Farm acted at least in reckless disregard of the Spansels' rights under the policy. Therefore, State Farm is not entitled to judgment as a matter of law on this portion of the bad faith claim either.

## DECLARATORY JUDGMENT

The Spansels seek declaratory judgment on the water exclusion, anti-concurrent clause, and hurricane deductible. State Farm argues the Court should interpret these provisions as did the Fifth Circuit in *Leonard v. Nationwide Mutual Insurance Company*, 499 F.3d 419 (5th Cir. 2007) and *Tuepker v. State Farm Fire and Casualty Company*, 507 F.3d 346 (5th Cir. 2007). State Farm maintains that the provisions are substantively indistinguishable from the ones at issue in those cases. Since *Leonard* and *Tuepker's Erie*-guesses, the Mississippi Supreme Court has spoken on the matter. *Corban*, 20 So. 3d 601.

### I. WATER EXCLUSION

First, the Spansels seek declaratory judgment that the water exclusion does not include storm surge, because it "is caused by wind." (Compl. at 9 (¶34)). The policy provides:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss . . .:
>
> c. **Water Damage**, meaning:
>
>    (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not. . . .

8

> However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

(Def.'s Mot. Partial Summ. J. Ex. F at 15).

The Mississippi Supreme Court examined a similar water exclusion in a recent Hurricane Katrina case. *Corban*, 20 So. 3d at ¶23. The *Corban* exclusion contained a virtually identical definition of water damage, to-wit: "[w]ater damage, meaning (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind." *Id.* *Corban* held that this water damage exclusion unambiguously included storm surge. *Id.* at ¶26. "'[S]torm surge' is plainly encompassed within the 'flood' or 'overflow of a body of water' portions of the 'water damage' definition, and no other 'logical interpretation' exists." *Id.* (quoting *United States Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 963 (¶13) (Miss. 2008)).

In so holding, *Corban* was persuaded partially by the Fifth Circuit's interpretation of the very State Farm water exclusion at issue. *Corban*, 20 So. 3d at ¶25 (discussing *Tuepker*). *See also*, *Tuepker*, 507 F.3d at 351. *Tuepker* held that this exclusion unambiguously included storm surge. *Id.* at 352.

The Court holds that the water damage exclusion, in the Spansels' homeowner's policy, includes storm surge.

## II. ANTI-CONCURRENT CLAUSE

Next, the Spansels seek a declaratory judgment that the anti-concurrent clause is ambiguous and unenforceable. The anti-concurrent clause is cited in the previous section. State Farm argues that this clause has been held unambiguous and enforceable by the Fifth Circuit.

9

Since that time, the Mississippi Supreme Court has rejected this contention. *Corban*, 20 So. 3d at ¶48. *Corban* held that the anti-concurrent clause was ambiguous and unenforceable to the extent that it purported to exclude any wind loss if it occurred separately from and in any sequence to excluded water loss. *Id.* at ¶¶32, 40-41. State Farm has not shown it is entitled to summary judgment on this portion of the declaratory judgment claim.

### III. HURRICANE DEDUCTIBLE

The Spansels seek a declaratory judgment that the hurricane deductible portion of the policy entitles them to recover from storm surge loss, so long as it occurs during a hurricane. First, as State Farm argues, Mr. Spansel testified in his deposition that he is not pursuing this claim. There is no evidence, however, that Mrs. Spansel has dropped this claim, so the Court still needs to consider the merits.

Although this "hurricane deductible" argument was addressed in *Corban*, the argument was rejected, because, "[t]he 'wind and hail' deductible makes no reference to being a 'hurricane deductible.' In fact, the term 'hurricane' is found nowhere in the homeowner's policy." *Id.* at ¶34 n.21.

On the contrary, the Spansels' policy contains an express "Hurricane Deductible Endorsement." (Pls.' Resp. Ex. G at 6). It provides:

**Definitions**

As used in this endorsement **hurricane** means a storm system that has been declared to be a **hurricane** by the National Hurricane Center of the National Weather Service. The duration of the **hurricane** includes the time period, in this state:

  1. beginning at the time a **hurricane** watch or **hurricane** warning is issued for any part of this state by the National Hurricane Center of

> > the National Weather Service;
>
> > 2. continuing for the time period during which the **hurricane** conditions exist anywhere in this state; and
>
> > 3. ending 24 hours following the termination of the last **hurricane** watch or **hurricane** warning for any part of this state by the National Hurricane Center of the National Weather Service.
>
> The following Deductible language is added to the policy:
>
> **Deductible**
>
> The Hurricane deductible percentage applies only for direct physical loss or damage to covered property caused by wind, wind gusts, hail, rain, tornadoes, or cyclones caused by or resulting from a **hurricane** as defined above. The deductible for loss caused by each **hurricane** occurrence is the amount determined by applying the deductible percentage to the **COVERAGE A–DWELLING** limit shown in the **Declarations**.
>
> In the event of a **hurricane** loss, this deductible will apply in place of any other deductible stated in the policy. In no event will this deductible be less than the Section I deductible amount shown in the **Declarations**.
>
> All other policy provisions apply.

*Id.* The deductibles quoted on the Declarations Page are:

> **Deductibles–Section I**
>
> | | |
> |---|---|
> | Hurricane 2.00% | $2,766 |
> | Other Losses | $2,000 |
>
> In case of loss under this policy, the deductibles will be applied per occurrence and will be deducted from the amount of the loss. Other deductibles may apply–refer to policy.

*Id.* at 1. This provision does not purport to create, expand, or withdraw coverage. Rather the provision sets a separate deductible to certain enumerated losses caused by a hurricane. In all other situations, the hurricane deductible does not apply. Therefore, this provision does not

11

create coverage for storm surge.

The Fifth Circuit has likewise interpreted this endorsement. In another Hurricane Katrina case, analyzing an identical State Farm policy, *Tuepker* held that the hurricane deductible endorsement "clearly only applies to the deductible, and does not affect the scope of coverage under the policy." *Tuepker*, 507 F.3d at 355. This Court has found no Mississippi cases to the contrary.

The Court holds that the Hurricane Deductible Endorsement does not create coverage for storm surge.

MISREPRESENTATION

The Spansels claim both negligent and intentional misrepresentation based on State Farm's statements that it had investigated the Spansels' claim and, based upon that investigation, determined that flood caused all of the loss. State Farm argues that both claims fail because the Spansels neither reasonably nor detrimentally relied on these statements.

Reasonable and detrimental reliance are elements that the Spansels must prove in both their fraud and negligent misrepresentation claims. *Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (¶20) (Miss. 2007) (negligent misrepresentation); *Beck Enters., Inc. v. Hester*, 512 So. 2d 672, 675 (Miss. 1987) (fraud). The Spansels do not argue that they relied on these representations. The Spansels do not purport to have ever believed that State Farm conducted an investigation or to have ever believed that flood was the cause of all of their losses. Rather, they maintain they "reasonably believed . . . that State Farm would not recognize that any wind damage occurred" and this caused them mental anguish. (Pls.' Resp. at 25). To the extent that the representations can be said to convey that State Farm would not pay for any wind damage,

that has thus far turned out to be true. The alleged falsity of the statements did not induce any reliance on behalf of the Spansels. Without reliance, the alleged false statements are not actionable. Because there is no genuine issue of material fact, State Farm is entitled to summary judgment on both the fraud and negligent misrepresentation claims.

REPLACEMENT COSTS

State Farm argues that the Spansels may not recover replacement costs, because the Spansels did not rebuild within two years of Hurricane Katrina. The Spansels argue that this failure is excused by State Farm's prior material breach of the insurance contract.

First, State Farm repeatedly asks the Court not to determine whether there is any covered loss owed under the policy. Second, it is undisputed that the home was under insured. The only evidence of the home's value was its last appraisal of $319,000, prior to improvements, in the year 2000. Viewed in the light most favorable to the plaintiffs, the Court must assume that the wind caused one hundred percent of the remaining uninsured loss, especially since State Farm is not challenging that contention for the purposes of this summary judgment motion. In this case, the actual cash value of the loss (which is presumably less than the replacement cost) exceeds the policy limits. The Spansels cannot recover more than the policy limits on their breach of contract claim, so whether or not they are entitled to replacement costs does not appear to be a material issue on this record.

Further, State Farm does not dispute on this motion whether or not it breached the contract on October 19, 2005. State Farm does not challenge that a prior material breach excuses further performance by the other party. Instead State Farm points to an unpublished order ruling on fifteen motions *in limine*, by Judge Ozerden, in *Fowler v. State Farm*. State Farm argues that

this opinion rejected the Spansels' argument of "*sub silentio*." (Def.'s Reply at 8). Judge Ozerden's opinion did not discuss or address the prior breach of contract issue. Because it was not addressed, the Court cannot speculate on whether it was considered.

State Farm has not shown that it is entitled to judgment as a matter of law on this issue. The Court makes no judgment on what measure of damages the Spansels may recover if successful on their breach of contract claim.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In the Complaint, the Spansels each claim intentional infliction of emotional distress based on State Farm's denial of their homeowner's claim. State Farm argues that these claims should be dismissed because they are untimely, and because State Farm did not cause the Spansels' distress. They respond that their claims are tolled as continuing torts, and they may recover for emotional distress as part of their bad faith claim. They do not argue that they are making a separate intentional infliction of emotional distress claim. They argue only that they may recover this as part of their *Veasley* bad faith damages. Because they are no longer making an independent intentional infliction of emotional distress claim, the Court need not consider whether it is timely or has merit. Since these claims are abandoned, State Farm is granted summary judgment on the Spansels' intentional infliction of emotional distress claims. As set forth previously, however, the jury will consider whether the Spansels are entitled to recover for their alleged emotional distress as part of their *Veasley* damages.

BREACH OF FIDUCIARY DUTY

The Spansels maintain that they did not bring a breach of fiduciary claim against State Farm but only against Saucier, who was dismissed. In the alternative, the Spansels concede that

14

if the Complaint can be read to include this claim against State Farm as well, then that claim should be dismissed. The Complaint does allege a breach of fiduciary duty claim against State Farm. Accordingly, based on the agreement of the parties, this claim is dismissed.

MISSISSIPPI VALUED PROPERTY STATUTE

The Spansels concede that this claim should be dismissed.

INDEMNITY

Count 13 of the Complaint sets out a claim for "indemnity," which alleges that State Farm owes insurance coverage to the Spansels under the homeowner's policy. State Farm argues that this claim should be dismissed because the Spansels are not liable to any third parties. This claim does not seek recompense for any monies the Spansels have to pay to injured third parties. Rather this claim is a restatement of the breach of contract claim. Because the indemnity claim is merely a duplication of the breach of contract claim, it will be dismissed, and the breach of contract claim, which is not challenged at this stage, will proceed to trial.

UNJUST ENRICHMENT

The Spansels charge State Farm with unjust enrichment for collecting premiums, yet failing to provide any insurance coverage, which is allegedly due. State Farm argues this claim should be dismissed because there is a legal contract between the parties. The Spansels do not respond.

"Unjust enrichment only applies to situations where there is no legal contract." *Powell v. Campbell*, 912 So. 2d 978, 982 (¶14) (Miss. 2005). In this case there is a legal contract, at least to the extent set forth above. Therefore, State Farm is entitled to dismissal of the unjust enrichment claim.

REFORMATION

The Spansels seek to reform the contract to include storm surge loss. State Farm argues this claim fails, because they did not rely on any misrepresentations and the claim is not based on a drafting mistake. The Spansels respond that this is the remedy they seek based on State Farm's fraudulent "representations that it had conducted an investigation upon which [State Farm] reached the conclusion that the cause of the Spansels' loss was due entirely to flood." (Pls.' Resp. at 24).

As set forth previously, the misrepresentation claims fail for lack of reliance. If the Spansels did not rely on these alleged misrepresentations, then they cannot reform the contract on the basis of these misrepresentations. The claim for reformation is dismissed.

SPECIFIC PERFORMANCE

State Farm argues that the claim for specific performance should be dismissed because the Spansels have an adequate remedy at law. They did not specifically respond; however, the specific performance that they seek are the insurance proceeds which are allegedly due.

Specific performance is an equitable remedy for breach of contract. *Derr Plantation, Inc. v. Swarek*, 14 So. 3d 711, 717 (¶15) (Miss. 2009). "In a suit for specific performance, the court may order specific performance along with damages for the defendant's delay in performing the contract. Or, the court may, in its discretion, reject the plaintiff's claim that specific performance is the most appropriate remedy and instead award compensatory damages as the entire remedy for the breach." *Id.* at 718 (¶16). The general rule is that a court will not grant specific performance where damages are adequate to compensate the plaintiff. *Tyson Breeders, Inc. v. Harrison*, 940 So. 2d 230, 234 (¶12) (Miss. 2006).

Since the specific performance that the Spansels seek are equal to the money damages they seek for breach of contract, then the money damages are adequate to compensate them for any alleged breach of contract. The claim for specific performance is dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant State Farm Fire and Casualty Company's [35] Motion for Partial Summary Judgment should be and is hereby **GRANTED** as to the declaratory judgment claims on the water exclusion and hurricane deductible, misrepresentation, intentional infliction of emotional distress, breach of fiduciary duty, Mississippi Valued Property Statute, indemnity, unjust enrichment, reformation, and specific performance. The remainder is **DENIED.**

**SO ORDERED AND ADJUDGED** this the 6th day of January, 2010.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE