UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES SPANSEL and JANET SPANSEL | § § § | PLAINTIFFS |
| V. | § § | CAUSE NO. 1:08cv1516-LG-RHW |
| STATE FARM FIRE AND CASUALTY CO. and JOHN DOES 1-10 | § § § | DEFENDANTS |

### ORDER DENYING MOTIONS TO EXCLUDE

BEFORE THE COURT are Defendant State Farm Fire and Casualty Co.'s Motion to Exclude the Testimony of Plaintiffs' Expert Witness Rocco Calaci [37] and Motion to Exclude the Testimony of Plaintiffs' Expert Witness Neil B. Hall [39]. State Farm argues that Calaci (1) is not qualified to render causation opinions, (2) based his winds speed conclusions on incomplete, unreliable, and irrelevant data, (3) ignored contrary data, and (4) failed to fully disclose his opinions. As for Hall, State Farm argues that (1) the Plaintiffs' judicial admissions are contrary to his opinion, (2) he is not qualified, and (3) his opinion is not based on "reliable" data nor (4) a reliable method. The Court has considered the parties' submissions and the relevant legal authority. The motions are denied.

The Spansels lost their vacation home due to Hurricane Katrina. After State Farm denied their claim on their homeowner's policy, they initiated this bad faith action. They designated Calaci to testify as an expert meteorologist on the weather conditions at the home during the hurricane. His meteorology opinions have been ruled admissible numerous times in this Court. He has testified as an meteorology expert twice in trial before this Court, once in *Leonard v. Nationwide Mutual Insurance Company*, No. 1:05cv475-LTS-RHW and then in *Webster v. USAA Casualty Insurance Company*, No. 1:05cv715-LTS-RHW. The Spansels

designated Hall to testify as an expert engineer on the cause of loss to the subject property. His testimony has been held to pass *Daubert* standards in previous cases. *See, e.g., Voth v. State Farm Fire & Cas. Ins. Co.*, No. 07-4393 Section "K"2, 2009 U.S. Dist. LEXIS 18479 (E.D.La. Feb. 17, 2009) (Duval, J.); *Webster v. State Farm Fire & Cas. Co.*, No. 07-4812 Section I/1, 2008 U.S. Dist. LEXIS 39490 (E.D.La. May 15, 2008) (Africk, J.); *Duplaisir v. Warren Props., Inc.*, No. 97-0497 Section A, 1998 U.S. Dist. LEXIS 14041 (E.D.La. July 6, 1998) (Schwartz, J.). This Court has previously overruled State Farm's *Daubert* objections to Hall's testimony, subject to the right to voir dire him on his qualifications. *Stevens v. State Farm Fire & Cas. Co.*, No. 1:06cv175-LTS-RHW, at Dkt. 140 (S.D. Miss. July 5, 2007) (Senter, J.); *Therrell v. State Farm Fire & Cas. Co.*, No. 1:06cv151-LTS-RHW at Dkt. 128 (S.D. Miss. July 5, 2007) (Senter, J.)

Whether to admit or exclude evidence, including expert testimony, is within the discretion of the trial court. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-43 (1997).

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if, (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

CALACI

    I.    CAUSATION

State Farm first argues that Calaci is unqualified to opine on the cause of damage to the Spansels' structure. The Spansels respond that Calaci will not testify as to causation.

Calaci's expert report contains both opinions on the weather elements at the home during

Katrina and on what perils of the storm caused damage to that property. In his deposition, however, he testified that he will not give this causation testimony at trial. Since both the witness and Plaintiffs' counsel agree that causation will not be a part of his trial testimony, this part of the motion is moot.

> II.    METEOROLOGY

State Farm argues that the remainder of Calaci's opinions are insufficient under the discovery rules and under *Daubert* and are more unfairly prejudicial than probative.

> A.    WIND SPEEDS

Calaci opines as to the wind speed experienced in Pass Christian during Hurricane Katrina. State Farm argues that his wind speed calculations are based on insufficient facts and data because it is based on data that was not taken "at Plaintiffs' property." (Def.'s Mem. to Exclude Calaci at 9). State Farm claims that all other locations were irrelevant. He states that his wind speed calculations are based upon wind and pressure measurements taken at New Orleans Naval Station, Gulfport Airport, Pascagoula Airport, and the Mobile Airport. He used this to create a calculation, based on the pressure gradient field methodology, to determine the wind speeds over Pass Christian. He also used wind speed data, for example, from a drop sonde over Henderson Point in Pass Christian, from eight miles to the east in Gulfport, a graph showing wind speeds southwest of Pass Christian, and Pearl River, Louisiana to test his calculations. This method has been previously ruled admissible in this Court. *See, e.g.*, *Politz v. Nationwide Mut. Fire Ins. Co.*, No. 1:08cv18-LTS-RHW, 2009 U.S. Dist. LEXIS 42078 at *2 (S.D. Miss. May 18, 2009) (Senter, J.); *Medical Plaza, LLC v. United States Fid. & Guar. Co.*, No. 1:07cv98-LTS-RHW, 2008 U.S. Dist. LEXIS 89030 at *4 (S.D. Miss. Oct. 7, 2008) (Senter, J.); *Webster*, No.

1:05cv715-LTS-RHW at Dkt. 233 (July 23, 2007) (Senter, J.). State Farm proffers an expert who relies on wind data from as far away as Pascagoula. Accordingly, the Court finds that the report is based on sufficient facts and data.

      B.    MICROBURSTS

State Farm next argues that Calaci "ignores contrary evidence and cherry-picks data," because even though he opines as to the existence of microbursts, he fails to mention that leading experts have not opined as to the existence of microbursts. As State Farm points out, he provides an excerpt that states that forecasters should not rely solely on NEXRAD to indicate a microburst during severe weather. First, it is not clear that this is contrary data. Just because other experts have not stated that whether there were microbursts, does not necessarily mean that these same experts have concluded that there were not microbursts. Secondly, even if it were considered to be contrary evidence, this is not a reason to deem his opinion inadmissible. Whether or not other experts agree, and whether or not he acknowledges that other experts disagree is a matter of credibility for the jury to consider in weighing his testimony.

      C.    RULE 26

Finally, State Farm argues that his report fails to comply with Rule 26, because he omits data and failed to include his calculations.

Rule 26 provides that the expert report must contain the entire opinions to which the expert is expected to testify as well as the basis therefore. Fed. R. Civ. P. 26. Specifically,

> Unless otherwise stipulated or ordered by the court, th[e expert] disclosure must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specifically employed to provide expert testimony in the case. . . . The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them. . . .

Fed. R. Civ. P. 26(a)(2)(b). The parties must supplement disclosures in either "a timely manner if the party learns that in some material respect the disclosure or response is incomplete . . . and if the additional . . . information has not otherwise been made known to the other parties during the discovery process or in writing," or as ordered by the court. Fed. R. Civ. P. 26(e)(1). For expert report disclosures, any supplemental information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due. Fed. R. Civ. P. 26(e)(2). These are due, "unless the court orders otherwise, . . . at least 30 days before trial." Fed. R. Civ. P. 26(a)(3). The trial in this matter is currently scheduled on a three-week trial calendar, beginning March 8, 2010.

Calaci's report cites the data and sources for the data that he used. He accounts for the actual wind speeds, the pressure readings, and the wind directions, and the time line, among other things. For example, he cites the FAA certified weather stations in Gulfport and Pascagoula. He cites the weather equipment at the Mobile airport. He cites the weather station equipment at New Orleans. Among others, he cites the Mobile National Weather Service's NEXRAD data, and drop sonde data from Richard Henning. With the report, he provided a compact disc with all of the referenced data. In his deposition, State Farm asked:

> Q    Just for record purposes, Rocco, the disc that is now Exhibit 2 is generally the same information that we received in another case; to wit, background supporting documentation, drop zone, raw data, things of that nature.
>
> A    Correct.
>
> Q    Is there anything peculiar to this investigation that would be on this disc

>    that you did not find, for instance, on another disc without speculating?
>
> A  Only the exhibits that are specific to this property, reports specific to this property.
>
> Q  To include photographs taken on-site?
>
> A  Correct.

(Calaci Dep. at 5-6).

Calaci's report verbally explains his pressure gradient methodology. His report's description of this methodology matches that in previous cases before this Court. It was held that he met Rule 26's requirements, when this same argument was made. *Webster*, No. 1:05cv715-LTS-RHW at Dkt. 233.

State Farm nevertheless points to a bench ruling in this Court, in another Hurricane Katrina case, regarding a separate expert in engineering. The Court held that the expert did not disclose the basis for his conclusions. His engineering report in that case was two pages. It described the damage to the house and then in one paragraph concluded that the house was destroyed by wind, that wind was the stronger force, and that the structure would not have been able to resist the wind. He gave no explanation for this conclusion. His replacement cost report was one page and listed the amounts to rebuild the house but gave no basis for these amounts. Judge Ozerden ruled, that the basis for the opinion "has to be disclosed and explained. [The expert] can't just do it on his own and publish the ultimate conclusions he reaches. That is what happened in this case." (May 22, 2008, Hearing Tr., *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06cv489-HSO-RHW, at 6).

In contrast, Calaci gave an explanation of the method he used and this explanation has

been deemed sufficient disclosure in previous cases before the Court.

HALL

As for Hall, State Farm argues his opinion fails under *Daubert* because it is contrary to the Spansels' admissions, he is unqualified, he did not rely on sufficient facts and data, and his methodology is unreliable.

### I.    CONFLICT IN THE TESTIMONY

First, State Farm argues that the Spansels have judicially admitted and that Mr. Spansel has testimonially admitted that the home was partially destroyed by flood because they accepted flood proceeds. Because Hall has an allegedly different opinion, State Farm maintains his testimony does not pass *Daubert*. The Spansels dispute whether Hall's opinion is inconsistent with their position. Assuming that his testimony does conflict with the Spansels' acceptance of flood insurance proceeds, this matter, as all matters of conflicting testimony, would touch upon the weight and credibility of Hall's testimony, not its admissibility under *Daubert*.

### II.    QUALIFICATIONS

The Spansels designated Hall to testify as an engineer on the cause of loss to their property. State Farm argues that Hall is unqualified because he does not have an engineering degree, is not a meteorologist, has not studied coastal hydrology, and is a "professional witness." The Spansels respond that he is qualified.

#### A.    ENGINEERING

Hall is a licensed engineer. He has degrees and licenses in architecture. He has previously been qualified to testify as an expert in civil and structural engineering. His experience includes investigating wind claims on behalf of State Farm. He also has experience

in investigating wind versus water loss in hurricane events. He is a member of American Society of Civil Engineers. He served on FEMA's Building Performance Appraisal Team in the aftermath of Hurricane Georges. He holds the designation of "wind engineer" for the Texas Department of Insurance and "wind investigator" for the United States Department of Energy. (Def.'s Mot. to Exclude Hall Ex. 2 at 33). He is a member of the ASCE/SEI Standards Committee for the Structural Condition Assessment and Rehabilitation of Existing Buildings. He has knowledge of building codes and standards. He has served in both the Army and Navy Corps of Engineers. Thus the Court finds he does have experience in engineering.

### B.    METEOROLOGY AND COASTAL HYDROLOGY

State Farm argues that "although Mr. Hall opines in his report as to the timing of wind speeds and storm surge levels . . . he is not a meteorologist and has not studied coastal hydrology." (Def.'s Mem. to Exclude Hall at 12). He does not opine as to the timing of wind and surge. He relies on a meteorologist's time line of weather data. State Farm nevertheless argues that Hall is unqualified to verify the time line. This is a matter that goes to the weight and credibility of his opinion, perhaps, but not to his qualifications to opine that, based on the time line, this is how the damage would have occurred. The time line is just a basis of his opinion, not his opinion itself. State Farm's own engineering experts rely on weather information from other sources.

Other courts have similarly rejected this argument. *Webster*, 2008 U.S. Dist. LEXIS 39490 at *7. The Eastern District of Louisiana noted that Hall only stated what weather conditions he considered. *Id.* "Hall's conclusions concerning wind damage and recommendations for repair do not create new weather information; Hall's use of the weather

data is, rather, a basis for reaching those recommendations and conclusions." *Id.* at *7-8.

Furthermore, Hall testified that he has experience in coastal hydrology and with storm surge models:

> A.  . . . Wave height is not meteorology. It's coastal hydrology and it's part of civil engineering.
>
> Q.  Have you ever taken a coastal hydrology course?
>
> A.  No. But I spent five years of the Army Corps of Engineer and 15 in the Navy civil engineer Corps designing construction of the coastal environment.

(Def.'s Mot. to Exclude Hall Ex. 5 at 77). He testified that storm surge models are also a part of civil engineering.

### C. PROFESSIONAL WITNESS

Finally, whether or not Hall is a "professional witness" goes to bias only and thus to the weight and credibility of his testimony. This, even if true, would not make him *per se* unqualified. If his testimony be rejected on this basis, it is for the jury to do so, not the Court.

The Court holds that Hall is qualified to render his opinions in this case.

### III. SUFFICIENT FACTS OR DATA

State Farm argues that Hall's opinion is based on "unreliable" facts or data because he relied on a belated site inspection, he does not know the construction quality of the home, and used biased meteorological data.

#### A. BELATED SITE INSPECTION

Hall examined photographs of the Spansels' site taken both immediately after Hurricane Katrina and on April 11, 2009, after the property had been cleared. State Farm argues that the

latter were admittedly unhelpful, because Hall testified there was very little to glean from them.

It does not appear that Hall used any information from the photographs. Although he cites them as one of the several things he examined, he testified:

> I had already predetermined that there would be very little worth seeing. Had there been something in the photographs that changed my mind, I would've done a follow-up trip.
> I looked at the photographs. There was virtually nothing there except restored property. There was no artifacts to look at to take advantage of the analysis.

(Hall Dep. at 19-20). He did not do a follow-up trip. Because he did not use any information from this inspection, then he did not rely on it for his opinion.

### B.    CONSTRUCTION OF THE HOME

State Farm argues that Hall has no understanding of the quality of the construction of the Spansels' home. His understanding of the construction of the home basically matches that of State Farm's experts. Further, although Hall did not know the its age, he assumed in State Farm's favor, that the home had been constructed per the more stringent 2003 building codes, which require hurricane resistant construction. The home was built before 2003. Also, he assumed in State Farm's favor, that it did not have any features that would make it particularly susceptible to wind damage such as picture windows or an oversized porch. Hall's report appears to be based on sufficient facts and data. Whether that data is true is for the jury to determine.

### C.    BIASED METEOROLOGICAL DATA

State Farm argues that the meteorological data that Hall relies upon is biased because it was prepared for litigation in another case by a witness who was testifying on the same side as

Hall. This goes to the weight and credibility of Hall's opinion, not to the sufficiency of the data.

### IV. METHODOLOGY

Finally, State Farm argues Hall's methodology is unreliable because he allegedly misuses the Enhanced Fujita Scale, there are no peer reviewed literature supporting his work, and he fails to exclude water.

His methodology using the Enhanced Fujita Scale has been repeatedly held admissible by this and other courts, as cited above. As for whether or not it is subject to peer review, in his published article he cites sources of other experts and their review of his method.

Also, his opinion does exclude water as the first or sole cause of loss based upon the weather data he uses. State Farm argues that he cannot exclude it based on this data, because it is biased. This argument, as set forth before, attacks credibility only. Accordingly, the motion to exclude Hall is denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant State Farm Fire and Casualty Company's [37] Motion to Exclude the Testimony of Plaintiffs' Expert Witness Rocco Calaci should be and is hereby **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that State Farm's [39] Motion to Exclude the Testimony of Plaintiffs' Expert Witness Neil B. Hall should be and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED** this the 27th day of January, 2010.

> s/ *Louis Guirola, Jr.*
> LOUIS GUIROLA, JR.
> UNITED STATES DISTRICT JUDGE