IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CHARLES SPANSEL and JANET SPANSEL,

                              Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY
COMPANY and JOHN DOES 1-10,

                              Defendants.

No.:  1:08-CV-1516-LG-RHW

**STATE FARM'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 4
RE:  USE AND EFFECT OF FLOOD INSURANCE PAYMENTS [70]**

**TABLE OF CONTENTS**

**PAGE**

I. Preliminary Statement ................................................................................................. 1

II. Under the Great Weight of Authority and the Indemnity Principle, Plaintiffs' Receipt and Retention of Flood Insurance Payments Establishes That Flood Damage Occurred in an Amount at Least Equal to the Flood Payments Issued ............................................... 2

III. Plaintiffs' Admission Estops Them from Playing "Fast and Loose" with this Court by Attempting to Repudiate Their Receipt and Retention of Flood Insurance Proceeds .................. 8

    A. Judicial and Equitable Estoppel Protects Against Plaintiffs' Double Indemnity ............... 8

    B. Plaintiffs Knowingly Sought, Received, and Retained SFIP Payments Under the NFIP for Flood Damage to Their House and Personal Property ...................................... 10

IV. The Collateral Source Rule Is Inapplicable ............................................................... 12

V. Conclusion ................................................................................................................. 14

I.   **PRELIMINARY STATEMENT**

State Farm Fire and Casualty Company ("State Farm") respectfully submits this response in opposition to Plaintiffs' motion *in limine* regarding their application for, receipt, and retention of flood insurance payments. [70]. Courts have repeatedly held in Hurricane Katrina cases that receiving and retaining flood insurance payments establishes that the property sustained flood damage at least corresponding to the amount of the payments. *See, e.g.*, *McIntosh v. State Farm Fire & Cas. Co.*, 2008 WL 1776409, at *2 (S.D. Miss. Apr. 14, 2008); *see also infra* at Part II (citing additional cases). As discussed below, these rulings on this issue are correct and apply with equal force in this case.

Here, it is undisputed that Plaintiffs held a Standard Flood Insurance Policy ("SFIP") under the National Flood Insurance Program ("NFIP"). The policy covered flood damage to Plaintiffs' dwelling and personal property and excluded wind damage. *See* 44 C.F.R. pt. 61, app. A(1), art. I, V(D)(8) (2009). Following Hurricane Katrina, Plaintiffs received $148,400 for flood damage to their dwelling and $100,000 for flood damage to their personal property. Jan. 6, 2010 Order [50] at 2.

Now, Plaintiffs contend that their receipt of flood insurance proceeds is "not relevant to any issue in this case" and that allowing evidence of such payments into the record would somehow result in "undue prejudice." [70] at 4-5. Plaintiffs have not, however, returned the $248,400 they received for flood damage to their property. Instead, Plaintiffs propose they retain $248,400 for flood damage while State Farm is prevented from citing Plaintiffs' application for, receipt, and retention of flood insurance proceeds as evidence that Plaintiffs' house and personal property sustained at least $248,400 worth of aggregate flood damage. But it is well-established that an insured's acceptance and retention of flood insurance payments is a judicial admission by Plaintiffs that the property sustained flood damage in the amount of the flood insurance payments. Thus, Plaintiffs cannot claim that the receipt of this payment "has little probative value." [70] at 5. On the contrary, such evidence is highly probative on the key issues in this case, including (i) the cause of damage to Plaintiffs' house and personal property, (ii) State

Farm's reasonable basis for denying Plaintiffs' homeowners insurance claim, (iii) and Plaintiffs' emotional distress claim.

Nor does the collateral source rule apply in this case to change the binding effects of Plaintiffs' application for and acceptance of flood insurance payments. That rule applies to tortfeasors who attempt to mitigate damages when the damages are paid **for the same loss**. *Geske v. Williamson*, 945 So. 2d 429, 434 (Miss. Ct. App. 2006). Here, not only is State Farm not a tortfeasor, the flood insurance payments were for an entirely different loss: flood damage. As Judge Senter properly recognized, the collateral source rule does not apply in "in this hurricane insurance setting." *Gunn v. Lexington Insurance Co.*, 2008 WL 2039543 (S.D. Miss. May 12, 2008) (Senter, J.).

In short, under the well-reasoned precedent on this issue, Plaintiffs' inequitable and illogical proposition should be rejected, and their motion should be denied in its entirety.

**II.    UNDER THE GREAT WEIGHT OF AUTHORITY AND THE INDEMNITY PRINCIPLE, PLAINTIFFS' RECEIPT AND RETENTION OF FLOOD INSURANCE PAYMENTS ESTABLISHES THAT FLOOD DAMAGE OCCURRED IN AN AMOUNT AT LEAST EQUAL TO THE FLOOD PAYMENTS ISSUED**

It is well-established that "the plaintiffs' receipt of flood insurance benefits constitutes a judicial admission that flood damage occurred and precludes the plaintiffs' denying that at least the amount of damage represented by the flood insurance payment was caused by flooding." *McIntosh v. State Farm Fire & Cas. Co.*, 2008 WL 1776409, *2 (S.D. Miss. Apr. 14, 2008) (Senter, J.)  The law provides that a judicial admission is "'conclusive'" and "binding on the party making [it]." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001) (citation omitted). It "has the effect of withdrawing a fact from contention" and may not be "controverted or explained by the party who made it." *Id.*

Numerous decisions reinforce this fundamental principle in Hurricane Katrina litigation, which stems from the common sense notion that "the claimant may recover under all available coverages *provided that there is no double recovery*." 15A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 56:34 (2d ed. 1983)) (emphasis added). "The indemnity principle limits the property owner's total

2

recovery to the amount of his loss, i.e. the property owner can collect no more, from all of his available insurance coverages, than the amount necessary to fully compensate him for the damage to his insured property." *Espinosa v. Nationwide Mut. Fire Ins. Co.*, No. 1:06CV896-LTS-RHW, 2008 WL 276534, at *1 (S.D. Miss. Jan. 30, 2008) (Senter, J.); *accord* 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 175:5 (3d ed. 2006) ("[B]oth the extent and the limitation of recovery is found in the concept of making good the loss which the insured has sustained.").

Judge Senter has correctly applied the indemnity principle to Hurricane Katrina litigation. *See Robichaux v. Nationwide Mut. Ins. Co.*, No. 1:06CV1165-LTS-RHW, 2007 WL 2783325, at *2 (S.D. Miss. Sept. 21, 2007) (Senter, J.) ("Once an insurance payment is made and accepted, this act establishes, as an admission by both the insurer and the insured, that the insured's losses were caused by an event covered by the policy under which the payment is made, at least to the extent of the amount paid and accepted."); *SIMA/Signature Lake, L.P. v. Certain Underwriters at Lloyds London*, No. 1:06CV186-LTS-RHW, 2006 WL 3538862, at *3 (S.D. Miss. Dec. 7, 2006) ("Where one insurer, in this instance the flood insurer, has settled an insured's claim by paying policy limits, the insured may be estopped from recharacterizing, as wind damage, losses for which he has accepted flood insurance compensation."); *Gemmill v. State Farm Fire & Cas. Co.*, No. 1:05CV692-LTS-RHW, slip op. at 2 (S.D. Miss. Mar. 15, 2007) (plaintiff's acceptance of $128,100 under his flood policy was "an admission by the plaintiff that at least this amount of damage was done by storm surge flooding").[1]

---

[1] *See also Schmermung v. Nationwide Mut. Ins. Co.*, No. 1:07CV1213-LTS-RHW, 2008 WL 5169369, at *2 (S.D. Miss. Dec. 5, 2008) (Senter, J.) (because of the plaintiff's application and receipt of flood payments, "Plaintiff will not be allowed to deny that the insured property experienced damage to some extent from the effects of storm surge flooding, and conversely may not assert that the destruction of his home was solely caused by the peril of windstorm"); *Sanders v. Nationwide Mut. Fire Ins. Co.*, No. 1:07CV98-LTS-RHW, 2008 WL 5120679, at *1 (S.D Miss. Dec. 3, 2008) (Senter, J.) ("The limits of the plaintiffs' SFIP coverage have been paid, and I have ruled in this and other cases that acceptance of flood insurance benefits is an admission by the recipient that the insured property was damaged by storm surge flooding to the extent of the SFIP benefits accepted."); *Holmes v. Meritplan Ins. Co.*, No. 1:07CV680-LTS-RHW, 2008 WL 4615439, at *1 (S.D. Miss. Oct. 16, 2008) (Senter, J.) ("Plaintiffs are estopped from denying that their insured property experienced damage to some extent from the effects of storm surge flooding at least in the amount of flood benefits that have been paid. This estoppel is based on the Plaintiffs' receipt of flood insurance benefits which constitutes an admission that some of the damage to their home was

(cont'd)

Judge Ozerden is also in accord with this well-settled precedent. Judge Ozerden held in a Hurricane Katrina case that "Plaintiffs' receipt of flood insurance benefits constitutes an admission that flood damage occurred," at a minimum, "'to the extent of the amount paid and accepted.'" *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06CV489-HSO-RHW, 2008 WL 305417, *8 (S.D. Miss. July 25, 2008) (Ozerden, J.) (quoting *Robichaux*, 2007 WL 2783325, at *3).

Federal courts in the Eastern District of Louisiana have also joined the great weight of authority on this issue. For example, in *Esposito v. Allstate Insurance Co.*, No. 06-1837, 2007 WL 1125761 (E.D. La. Apr. 16, 2007), the court held that the insurance company defendant was entitled to an offset for what the plaintiff had received under his flood policy. *See id.* at *1-2. The plaintiff in that case had received $185,265 under his flood policy but then sued under his homeowners policy, "contend[ing] that wind caused a total loss of the property and . . . seek[ing] the full policy limits on his homeowner's policy." *Id.* at *1. The court in *Esposito* held that a double recovery would be impermissible:

---

*(cont'd from previous page)*
caused by flooding."); *Dickinson v. Nationwide Mut. Fire Ins. Co.*, No. 06cv198-LTS-RHW, 2008 WL 2568140, at *1 (S.D. Miss. June 24, 2008) (Senter, J.) ("Nationwide asserts that the application for this flood damage grant and the receipt of the grant itself is an admission by the plaintiffs that their dwelling sustained flood damage and that the destruction of the property was not *solely* caused by the peril of windstorm. To this extent, Nationwide's point is well taken. I agree with Nationwide's contention that the plaintiffs' grant application and the receipt of the grant itself constitutes an admission that some of the damage to the plaintiffs' home was caused by flooding."); *Espinosa v. Nationwide Mut. Fire Ins. Co.*, No. 1:06CV896-LTS-RHW, 2008 WL 276534, at *1 (S.D. Miss. Jan. 30, 2008) (Senter, J.) ("Plaintiffs Mario and Rose Espinosa, having accepted flood insurance benefits of $250,000, have admitted that at least $250,000 of the damage done to their insured property was attributable to flood damage. The plaintiffs' total losses have thus been reduced by $250,000. In order to establish their right to recover the limits of liability under their Nationwide homeowners policy, the plaintiffs must prove, by a preponderance of the evidence, that they have sustained losses covered by the Nationwide homeowners policy in excess of this $250,000 that are equal to or greater than their Nationwide homeowners policy limits."); *Huynh v. State Farm Fire & Cas. Co.*, No. 1:06CV1061-LTS-RHW, 2008 WL 80759, at *1 (S.D. Miss. Jan. 7, 2008) (Senter, J.) ("[A]ll parties should be mindful of the Court's position that receipt of payment under a flood insurance policy usually establishes that at least that amount of flood damage occurred, and that this amount is factored into any ultimate recovery."); *Mills v. State Farm Fire & Cas. Co.*, No. 1:07CV73-LTS-RHW, 2007 WL 1514021, at *5 (Senter, J.) (S.D. Miss. May 21, 2007) ("By offering and accepting the flood insurance policy limits, the parties have indicated their agreement that at least to the extent of these benefits the damage to the insured property was caused by flooding, and the parties are now judicially estopped from denying this."); *Aiken v. Rimkus Consulting Group, Inc.*, No. 1:06CV741-LTS-RHW, 2007 WL 4245906, at *1 (S.D. Miss. Nov. 29, 2007) (Senter, J.) (same); *Letoha v. Natinowide Ins. Co.*, No. 1:06CV1009-LTS-RHW, 2007 WL 2059991, *2 (S.D. Miss. July 12, 2007) (Senter, J.) ("By accepting benefits tendered under a flood insurance policy, an insured makes a judicial admission that the insured property sustained flood damage at least equal to the flood insurance benefits he accepts. The insured is thereafter estopped to deny that this flood damage has occurred. The maximum the insured may thereafter recover is the difference between the pre-storm value of the insured property and the flood insurance benefits he has accepted.").

> [The plaintiff] is entitled to recover in this lawsuit any *previously uncompensated losses that are covered by his homeowner's policy and which when combined with his flood proceeds do not exceed the value of his property.* [The plaintiff] is not entitled to obtain a windfall double recovery by now recharacterizing as wind damage those looses for which he has already been compensated by previously attributing them to flood waters.

*Id.* at *2 (emphasis in original); *accord Mui v. State Farm Fire & Cas. Co.*, No. 06-8238, 2007 WL 5433485, at *2 (E.D. La. July 26, 2007) (Zainey, J.) ("By accepting the flood proceeds Plaintiffs tacitly confirmed that the damages identified were caused by flood. Consistent with the rulings in cases like *Weiss*, *Esposito*, and *Ware*, Plaintiffs cannot obtain a double recovery by reclassifying damages previously attributable to flood, and paid for under a flood policy, as now being attributable to wind.") Likewise, in *Ferguson*, Judge Berrigan in the Eastern District of Louisiana applied an offset for flood insurance payments even though the plaintiffs "never stated nor signed a proof of loss alleging their home was destroyed solely as a result of flooding." *Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507, at *4 (E.D. La. May 9, 2007) (Berrigan, J.).[2]

Plaintiffs present neither logic nor authority for why this Court should depart from the well-established precedent regarding the effect of accepting flood insurance benefits. The cases they cite do not support a contrary result. The decision in *Reyes v. Delta Dallas Alpha Corp.*, 199 F.3d 626 (2d Cir. 1999), turned on questions of New York state law and federal maritime law. Indeed, the issue in that case was whether informal receipt of certain benefits caused a formal waiver of the plaintiff's right to sue for negligence and unseaworthiness under the Jones Act, not whether the plaintiff's receipt of

---

[2] *See also Ragas v. State Farm Fire & Cas. Co.*, No. 07-1143, 2008 WL 425536, at *6 (E.D. La. Feb. 11, 2008) (Engelhardt, J.) (holding that plaintiff was not entitled to "obtain a windfall double recovery"); *Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.) (recognizing "the well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss"); *Wellmeyer v. Allstate Ins. Co.*, No. 06-1585, 2007 WL 1235042, at *2 (E.D. La. Apr. 26, 2007) (Feldman, J.) (recognizing that plaintiffs "may not enjoy a double recovery for the same lost property" under their flood and homeowners policies); *Louque v. State Farm Fire & Cas. Co.*, No. 06-2881, 2007 WL 1343636, at *2 (E.D. La. May 4, 2007) (McNamara, J.) (observing that "an insured cannot recover twice for a single loss"); *Boudoin v. State Farm Ins. Cos.*, Civil Action No. 06-01656, 2007 WL 2066853, at *4 (W.D. La. July 13, 2007) (Melancon, J.) (holding that plaintiffs were not entitled to a double recovery); *see generally Wellmeyer*, 2007 WL 1235042, at *2-3 & n.2 (citing cases).

insurance benefits constituted a judicial admission of damage in a particular amount resulting from a particular cause for evidentiary purposes. *See id.* at 629-30. Similarly, in the *Harrison Co. v. Norton*, 146 So. 2d 327 (Miss. 1962), another case cited by Plaintiffs, [70] at 4, the issue was whether Georgia law could have extraterritorial application to bar the plaintiff from seeking recovery in Mississippi and whether the plaintiff was entitled to compensation under the laws of Mississippi. *See id.* at 327-28. Again, the case did not deal with whether the plaintiff's receipt of insurance benefits was deemed a judicial admission of damage in a particular amount resulting from a particular cause for evidentiary purposes. *See id.*[3]

In addition, in this case, evidence of flood payments is highly relevant and not likely to cause unfair prejudice, confuse the jury, or inflame jurors' passions. Evidence of flood payments is highly probative on the central issue of the cause of damage to Plaintiffs' house and personal property. Evidence that Plaintiffs accepted $248,400 in flood benefits, thereby admitting to at least that amount of flood damage, establishes that at least that amount of Plaintiffs' loss is excluded under their homeowners policy. This is especially relevant given Plaintiffs' irreconcilable contention that wind rendered their property "a total financial loss prior to the arrival of the surge water." (Compl. ¶ 35.) Their acceptance of flood policy limits demonstrably refutes that assertion. Plaintiffs' admission that significant flood damage occurred also helps to establish that State Farm's adjustment was reasonable and based upon the available physical and meteorological evidence. For these reasons, the probative value of Plaintiffs' admissions of flood damage greatly outweighs any alleged prejudice or other countervailing factors.

Plaintiffs seem to pretend that the only causal issue in this case is wind. *See* [70] at 5. Yet, State Farm adjusted Plaintiffs' insurance claim applying the flood exclusion to their policy. Plaintiffs'

---

[3] *Genesis Ins. v. Wausau Ins. Cos.*, 343 F.3d 733, 738-40 (5th Cir. 2003), is equally unavailing. The issue there was whether the voluntary contribution to settlement of lawsuit by an insurer and its insured prevented both from subsequently seeking contribution for their share of the settlement from another insurer that had also participated in the settlement.

6

admission that their property sustained flood damage is highly probative to State Farm's defense of Plaintiffs' coverage claim. To exclude such evidence would be severely prejudicial to State Farm and violate State Farm's due process right to present "'every available defense.'" *Philip Morris v. Williams*, 549 U.S. 346, 358 (2007) (citation omitted).

Moreover, Plaintiffs receipt and retention of flood insurance payments is also admissible by State Farm to refute their extra-contractual claim of emotional distress. Plaintiffs allege in their Complaint that State Farm's "refusal to compensate the Plaintiffs for their loss" caused emotional distress and "placed them under enormous financial and emotional stress." (Compl. ¶ 70). State Farm should be allowed to present evidence that Plaintiffs received a large amount of flood insurance payments to refute their claim of financial and emotional stress. Such evidence is also probative to show that Plaintiffs' emotional distress was not caused by any financial loss but by other things, such as the Hurricane Katrina catastrophe. Plaintiffs should not be allowed to recover extra-contractual damages against State Farm for alleged emotional distress arising from a financial loss when Plaintiffs received $248,400 in flood insurance payments.

Further, Plaintiffs err in claiming that State Farm seeks to use their acceptance of flood benefits to automatically "get credit for monies paid" under their flood policy. [70] at 2. State Farm does not contend that Plaintiffs' acceptance of flood benefits always operates as a "credit," whereby State Farm's liability, if any, is automatically reduced dollar-for-dollar by the amount of flood benefits. Rather, in all events, Plaintiffs' acceptance of flood benefits is directly relevant to determining what portion of Plaintiffs' loss was caused by flooding and what portion was caused by wind, if any. Their receipt of $248,400 in flood payments shows that, at a minimum, at least that portion of their loss was not caused by wind, an excluded peril under their flood policy.

However, if Plaintiffs are awarded wind coverage for a portion of their house or personal property that had been adjusted and paid under the flood policy, then an offset would be required under

7

the indemnity principle, lest Plaintiffs receive an improper double-indemnity. Plaintiffs have retained all of the flood insurance payments for their house and personal property, and Plaintiffs received notice during the claims adjustment what portions of their property the flood insurance payments covered. It would be contrary to fundamental insurance law and Mississippi law for Plaintiffs to be paid twice for the same damage to their house or personal property, which Plaintiffs concede. [70] at 2. Nor may Plaintiffs recover more than the pre-loss value of their house or personal property.

Accordingly, the great weight of authority from this Court and others courts in Hurricane Katrina cases correctly holds that Plaintiffs' receipt and retention of flood insurance payments is a judicial admission that their property sustained flood damage and bears directly on Plaintiffs' claim for additional coverage.

### III. PLAINTIFFS' ADMISSION ESTOPS THEM FROM PLAYING "FAST AND LOOSE" WITH THIS COURT BY ATTEMPTING TO REPUDIATE THEIR RECEIPT AND RETENTION OF FLOOD INSURANCE PROCEEDS

Having received $248,400 under their flood policy, which *excludes* loss caused by wind, Plaintiffs now claim that *all* of their losses were caused by wind, and Plaintiffs seek to recover under their homeowners insurance policies for the same loss they were paid under the flood policy. Plaintiffs' vacillating and opportunistic positions are clearly inconsistent, and the law does not permit them to gain the economic windfall of these irreconcilable factual contentions.

#### A. Judicial and Equitable Estoppel Protects Against Plaintiffs' Double Indemnity

Judicial estoppel is an equitable doctrine that "'protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Khan v. Hakim*, 201 F. App'x 981, 984 (5th Cir. 2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). As an exercise of the Court's equitable power, the use of judicial estoppel is reviewed under an abuse of discretion standard. *See, e.g., In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004). It is intended to prevent the perversion of the judicial process and a party from "'playing fast

8

and loose' with the courts." *Id.* (citation omitted). It has long been the law that "'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *Zedner v. United States*, 126 S. Ct. 1976, 1987 (2006) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

Similarly, the doctrine of judicial estoppel prevents litigants "'from playing fast and loose with the courts to suit the exigencies of self interest,'" *In re Superior Crewboats, Inc.*, 374 F.3d at 334 (citation omitted), by asserting "'a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding,'" *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (citation omitted). The "earlier proceeding" need not have been a formal judicial proceeding, and courts have applied the doctrine to preclude a plaintiff from pursuing a legal claim that is fundamentally inconsistent with representations made in an earlier application for benefits. In *McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457 (5th Cir. 2005), the Fifth Circuit held that a plaintiff was judicially estopped from asserting a claim for age discrimination (which requires an allegation the plaintiff would have been able to perform the job for which he was not selected) based on the plaintiff's statements in an earlier claim for Social Security disability benefits that he was "unable to work" because of illness. *See id.* at 466; *see also Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 480-81 (5th Cir. 2000). As stated by one court, "[w]e cannot permit litigants to adopt an alternate story each time it advantages them to change the facts." *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 791 (7th Cir. 1999). That is precisely what Plaintiffs seek to do in this case by asserting that their house and personal property were entirely destroyed by wind, while simultaneously retaining the amounts paid under their flood insurance policy, which excludes losses caused by wind.

9

Equitable estoppel reaches the same result. "It is recognized that under the doctrine of equitable estoppel a party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." *Kaneb Servs., Inc. v. Fed. Sav. & Loan Ins. Corp.*, 650 F.2d 78, 81 (5th Cir. 1981) (citing cases).

Under either doctrine of estoppel, Plaintiffs' acceptance and retention of flood insurance payments bars them from advancing any contrary position, including that their property was entirely destroyed by wind. It further bars them from "present[ing] evidence of circumstances surrounding that decision and payment[.]" [70] at 5. Having accepted $248,400 in flood policy benefits, thereby admitting to at least that amount of flood damage, Plaintiffs may not now "controvert[] or explain[]" their binding admission of flood damage. *Martinez*, 244 F.3d at 476-77.

B. **Plaintiffs Knowingly Sought, Received, and Retained SFIP Payments Under the NFIP for Flood Damage to Their House and Personal Property**

Plaintiffs seeks to prove that wind caused *all* of their losses, (Compl. ¶ 35), an allegation that flatly contradicts their earlier receipt and retention of $248,400 in flood insurance payments. "[A] party with full knowledge of the facts, which accepts the benefits of a transaction, contract, statute, regulation, or order may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." *Kaneb Servs., Inc.*, 650 F.2d at 81. As explained below, Plaintiffs are charged with knowledge as a matter of law that the entire $248,400 paid under their flood policy covered flood damage to their house and personal property, not wind.

As a matter of law, Plaintiffs had "a duty to read and understand" their SFIP and "a duty to familiarize [themselves] with the terms of the policy." *Richmond Printing LLC v. Dir. FEMA*, 2003 WL 21697457, at *6 (5th Cir. 2003). "[I]n the context of an insurance policy, knowledge of contract terms is 'imputed to [the contracting party] as a matter of law.'" *Ross v. Citifinancial Inc.*, 344 F.3d 458, 465 (5th

10

Cir. 2003) (applying Mississippi law; citation omitted; alteration in original). Knowledge of the policy terms is imputed to Plaintiffs as a matter of law "[w]hether the policy was read or not." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 438 (5th Cir. 2007).

Moreover, Plaintiffs are charged with knowledge of the SFIP because the NFIP "is a federally-administered program supported by funds drawn from the federal treasury," and "the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005) (citing *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 63 (1984)); *accord Richmond Printing LLC*, 72 F. App'x at 97-98; *see Eaker v. State Farm Fire & Cas. Ins. Co.*, 216 F. Supp. 2d 606, 616-17 (S.D. Miss. 2001). Plaintiffs are also charged with knowledge of the SFIP as a matter of law, due in part to "the special nature" and "[t]he unique situation presented by the NFIP," which "creates additional responsibilities for the insured." *Richmond Printing LLC*, 72 F. App'x at 98. "Unlike a typical automobile or health insurance policy," the SFIP is published in the Code of Federal Regulations, which affords Plaintiffs "an additional outlet . . . to obtain information." *Id.* at 98. As a matter of law, that outlet "is sufficient to give notice of the contents of the document to a person subject to or affected by it." 44 U.S.C. § 1507.

Accordingly, in making a flood insurance claim, accepting payment, and retaining those proceeds, Plaintiffs knowingly acknowledged that the damage to their property, or at least that portion of the damage indemnified by the flood insurance payments, was a "direct physical loss by or from flood," 44 C.F.R. pt. 61, App. A(1), art. I, and was not directly or indirectly caused by "wind, or windstorm," *id.* at pt. 5(D)(8) art. V(D)(8). In light of Plaintiffs' knowledge of the nature of their SFIP payments, it would be unreasonable for Plaintiffs to contend otherwise. The essential factual predicate underlying Plaintiffs' claims for, acceptance, and retention of flood insurance proceeds – under a policy that covers "direct physical loss by or from flood" and specifically excludes loss caused "directly or indirectly" by

11

wind – is totally irreconcilable with their current claims that the same damage was caused by wind and not by flood. There was no mistake. Plaintiffs are trying to have it both ways.

> "The NFIP program did not *erroneously* make payments to Plaintiff for flood losses to his home. Plaintiff sought those payments and he obtained them by convincing FEMA that his losses were caused by flood and covered by his flood policy. Plaintiff has now been compensated for those losses based on the statements and information that he provided to FEMA. For purposes of the instant suit this Court will not allow Plaintiff to cavalierly repudiate those prior statements while nevertheless retaining the funds that he received based on those same statements."

*Esposito v. Allstate Insurance Co.*, No. 06-1837, 2007 WL 1125761, at *2 (E.D. La. Apr. 16, 2007); s*ee also SIMA/Signature Lake, L.P.*, 2006 WL 3538862, at *3 (noting that "[w]here one insurer, in this instance the flood insurer, has settled an insured's claim by paying policy limits, the insured may be estopped from recharacterizing, as wind damage, losses for which he has accepted flood insurance compensation"); *Glover v. Nationwide Mut. Fire Ins. Co.*, Civ. A. No. 1:06CV85-LTS-RHW, 2006 WL 3780858, at *1 (S.D. Miss. Dec. 21, 2006) (same).[4]

**IV.    THE COLLATERAL SOURCE RULE IS INAPPLICABLE**

Contrary to Plaintiffs' assertion that evidence regarding their receipt of flood payments should be "excluded under the collateral source doctrine," [70] at 3, the collateral source rule is inapplicable. Both Judge Senter and other judges in Katrina litigation have rejected the same contention that Plaintiffs incorrectly assert here.

The collateral source rule precludes a tortfeasor from "introduc[ing] evidence of a plaintiff's collateral sources of recovery in order to mitigate damages." *Geske v. Williamson*, 945 So. 2d 429, 434 (Miss. Ct. App. 2006) (citing *Busick v. St. John*, 856 So. 2d 304, 309 (Miss. 2003)). However, "if evidence [of a collateral source of recovery] is introduced for ***a purpose other than to mitigate damages***,

---

[4] Plaintiffs allege that *all* of their losses were due to wind and covered by the homeowners policy, but by retaining the flood insurance payments when they filed suit against State Farm, Plaintiffs effectively elected their remedy. Plaintiffs cannot maintain an action for "all wind" under their homeowners policy while retaining $248,400 for flood damage under their SFIP.

the collateral source rule is **not** violated and the evidence may be admitted." *Id.* (citing *Burr v. Miss. Baptist Med. Ctr.*, 909 So. 2d 721, 729 (Miss. 2005)) (emphasis added). Judge Senter has held in the Hurricane Katrina context that the collateral source rule does not prevent an insurer from using evidence of a separate insurance payment to disprove liability to an insured for a particular loss. For example, in *Gunn v. Lexington Insurance Co.*, 2008 WL 2039543 (S.D. Miss. May 12, 2008) (Senter, J.), the plaintiff sued his homeowners insurer to recover insurance benefits for the destruction of his house during Hurricane Katrina. The plaintiff claimed that wind caused the destruction, rather than flood. *See id.* at *1, *3. To show that the loss was caused by an excluded peril, the insurer sought to introduce evidence that the plaintiff had previously accepted flood insurance benefits for flood damage to the house and contents. *Id.* at *2. Because the plaintiff's acceptance of flood benefits was an admission that an "excluded – and mutually exclusive – peril" destroyed his house, these benefits were relevant to the insurer's liability. *Id.* at *3.[5] Thus, this Court allowed the insurer to introduce the evidence to prove that it was not liable and rejected the plaintiff's misapplication of the collateral source rule.

Federal courts in Louisiana Hurricane Katrina litigation have reached the same result. *See, e.g., Voth v. State Farm Fire & Cas. Co.*, No. 07-4393, 2009 WL 498625, at *3 (E.D. La. Feb. 19, 2009) (rejecting collateral source argument); *Treigle v. Allstate Indem. Co.*, No. 07-9519, 2008 WL 4809446, at *4 (E.D. La. Oct. 31, 2008) ("The goal of tort deterrence and accident prevention would not be served by application of the collateral source rule in this case because Allstate is not a tortfeasor."); *Webster v. State Farm Fire & Cas. Co.*, No. 07-4812, 2008 WL 2080907, at *4 n.20 (E.D. La. May 14, 2008) ("Because insurance contracts are contracts of indemnity and do not allow double recovery, the

---

[5] The *Thornton v. Sanders* case cited by Plaintiffs is not to the contrary. In that case, the court was simply asked to determine whether Mississippi recognized an impeachment exception to the collateral source rule and found that it did not recognize such an exception. *Thornton v. Sanders*, 756 So. 2d 15, 18 (Miss. Ct. App. 1999) ("We are asked to rule on the issue of whether the impeachment exception should be recognized under the collateral source doctrine."). Because the collateral source rule does not apply in this case, an exception to that rule is also irrelevant.

collateral source rule cannot be used to permit [plaintiff] to recover for the same losses under both policies.").

These holdings apply here with equal force. As Judge Senter held in *Gunn*, "[t]here is good reason" why the collateral source rule has not frequently been invoked in Hurricane Katrina cases: it does "not apply in this hurricane insurance setting." *Id.*

## V.   CONCLUSION

Accordingly, for all the foregoing reasons, this Court should deny Plaintiffs' motion in its entirety.

Dated:  February 3,  2010

Respectfully submitted,

`/s/   H. Scot Spragins`
H. SCOT SPRAGINS, MSB # 7748
HICKMAN, GOZA
& SPRAGINS, PLLC
Attorneys at Law
Post Office Drawer 668
Oxford, MS 38655-0668
(662) 234-4000
*Attorneys for Defendant*

14

**CERTIFICATE OF SERVICE**

I, **H. SCOT SPRAGINS**, one of the attorneys for the Defendant, **STATE FARM FIRE & CASUALTY COMPANY**, do hereby certify that I have on this date electronically filed the foregoing document with the Clerk of Court using the ECF system which sent notification of such filing to all counsel of record.

DATED: February 3, 2010.

                                                        `/s/ H. Scot Spragins`

                                                        H. SCOT SPRAGINS

H. SCOT SPRAGINS, MSB # 7748
HICKMAN, GOZA & SPRAGINS, PLLC
Attorneys at Law
Post Office Drawer 668
Oxford, MS  38655-0668
(662) 234-4000